Jimmie RUSSELL, Appellant,

v.

STATE of Indiana, Appellee.

No. 180S15.

Supreme Court of Indiana.

May 1, 1981.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from a conviction of voluntary manslaughter, a class B felony, Ind.Code § 35–42–1–3, raising six issues:

(1) admissibility of a photograph of the victim's body awaiting an autopsy;

(2) propriety of the trial court's denial of a motion in limine;

(3) insufficiency of the evidence to support the verdict;

(4) fundamental error in admission of evidence of the victim's family status;

(5) admissibility of defense evidence excluded as hearsay; and

(6) admissibility of gruesome photographs.

The evidence favorable to the State shows that on July 15, 1978, appellant, Jimmie Russell, in the aftermath of a fight between Harold Hunter (the victim's brother) and a neighbor, in Harold Hunter's front yard, obtained a shotgun and killed Walter Hunter with it.

I.

■ A photograph of the victim's body awaiting autopsy was exhibited to the jury. A defense objection that it was irrelevant, inflammatory, and redundant was overruled. It is contended on appeal that this ruling was error and that there could be no rational basis for showing it other than to inflame the passions of the jurors against appellant. He relies on *Kiefer v. State*, (1958) 239 Ind. 103, 153 N.E.2d 899, a case in which this Court reversed a conviction because during trial, photographs taken at the morgue showing the autopsy in progress and the victim's body after the autopsy had been completed, had been shown to the jury. The photograph here, appellant argues, was obviously superfluous because the witness who identified it made no further reference to it, and because other photographs had already been displayed covering every possible purpose for which they could be introduced. We cannot agree with this analysis.

*Kiefer* involved photographs of a body whose wounds were exaggerated by the autopsy process. In this case, the photograph showed a wound to the throat. This wound appeared less gruesome in the morgue photograph than it appeared in photographs already in evidence which had been taken earlier at the scene of the crime. The photograph was not superfluous because the deputy coroner used it to identify the subject of an autopsy about which he had been called to testify for the State. It is not fatal to the question of admissibility that the deputy coroner did not refer further to the photograph in giving testimony about the cause of death. In *Whitfield v. State*, (1977) 266 Ind. 629, 366 N.E.2d 173, this Court found no error in the admission into evidence of a photograph showing a victim lying in a pool of blood. We said that the picture was of use to the jury despite the absence of reference to it in the testimony and even though the parties had stipulated the cause of death. The photograph here was similarly of use in identifying the autopsy subject.

The trial court did not err in admitting this photograph into evidence.

## II.

Appellant contends that the trial court erred in overruling his motion in limine to prevent the State from introducing evidence which it knew was inadmissible. In his argument, however, appellant does not contend that the trial judge abused his discretion in overruling the motion in limine concerning the results of several scientific tests. Instead, appellant argues that in the course of the trial, the prosecution sought to introduce testimony, through a witness, about the results of a neutron activation test although the test results had not been introduced in evidence and the witness who was asked about the results was not the person who had performed the test. Defense counsel objected on hearsay grounds and the objection was sustained. Appellant's argument seems to focus on the prejudice engendered by his having been "forced" to object in front of the jury and appearing to be an obstructionist.

In addition, appellant points out that in closing argument the prosecution referred to the defense objection to the admission of evidence of the test results. Defense counsel objected to this comment and the trial court admonished the jury to disregard it. This comment was an evidentiary harpoon whose prejudicial impact could not be cured by admonition, appellant contends, citing *White v. State,* (1971) 257 Ind. 64, 272 N.E.2d 312.

The combination of being forced to object before the jury, having the prosecutor point out the objection in closing argument, and having the trial judge admonish the jury served to draw the attention of the jury to highly prejudicial testimony, appellant contends.

We can find no merit in this issue. In a recent case involving an allegation that a trial court erred in overruling a defendant's motion in limine directed at the exclusion of references to statements of a stabbing victim, we found no error because the defendant's contemporaneous objection was sustained and the objectionable evidence never entered the case. *Walker v. State,* (1980) Ind., 409 N.E.2d 626. Here, the evidence concerning test results was not admitted.

Concerning the claim that the prosecutor's comment was an evidentiary harpoon, we observe that the defense did not move for a mistrial. Indeed, when the trial judge asked defense counsel if he was satisfied with the admonition, counsel replied that he was satisfied. Moreover, a mistrial would not have been required if defense counsel had moved for one. This comment was the type of irregularity which can be cured by admonition. In the absence of a showing by the appellant that the comment had a discernible and apparent effect on the jury's verdict, we will presume that the jury was able to heed the admonition to disregard the improper comment. See *Hightower v. State,* (1973) 260 Ind. 481, 296 N.E.2d 654.

No error was committed on this issue.

## III.

Appellant next contends that the jury's finding of guilty of voluntary manslaughter was not based on substantial evidence and was contrary to the evidence in that it denied him his lawful presumption of innocence and in that the evidence was not reconciled with the theory of his innocence. Specifically he claims that the State failed to prove an essential element of voluntary manslaughter: sudden heat.

Appellant observes at the outset of this claim that there was much controverted evidence, but he acknowledges that when this Court reviews a claim of insufficiency it will consider only the evidence favorable to the State and reasonable inferences that can be drawn therefrom, and that the conviction will be set aside only if there is a lack of evidence of probative value from which a trier of fact could reasonably infer that a defendant is guilty beyond a reasonable doubt, citing *Rogers v. State,* (1972) 154 Ind.App. 445, 290 N.E.2d 135; and *Taylor v. State,* (1972) 259 Ind. 25, 284 N.E.2d 775.

The voluntary manslaughter statute provides:

"(a) A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a class B felony.

(b) The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter." Ind.Code § 35–42–1–3.

Regarding his claim about "sudden heat," appellant refers to the statutory definition of the crime prior to the 1977 amendment: "a person who knowingly or intentionally kills another human being while acting under an intense passion resulting from grave and sudden provocation commits a class B felony. . . . The state is not required to prove intense passion resulting from grave and sudden provocation."

Appellant claims that the omission of the burden-of-proof clause in the current statute as amended suggests that the state now bears the burden of proof. Regardless of the burden of proof, he argues, there was no reliable evidence of sudden heat. Since the jury found him not guilty of murder by virtue of the voluntary manslaughter verdict, and since there was no evidence of sudden heat, if follows that the only correct verdicts could have been "innocent" or involuntary manslaughter, he contends. At best, he continues, the evidence revealed that he had merely had an opportunity to commit the crime, and this created only a suspicion of guilt. The jury, he asserts, appeared to be unable to determine whether defendant or another man had killed the victim and in convicting him showed "an inclination to a compromise verdict," thereby denying him his legal presumption of innocence. Finally, defendant asserts that the residue of evidence fails to meet the requirement that each material allegation be supported by substantial evidence of probative value.

■ Appellant is mistaken in considering sudden heat a constituent element of the crime of manslaughter. The statute clearly states that sudden heat is a mitigating factor in conduct that would otherwise constitute murder, rather than a positive element. While it is plainly the State's burden to prove the existence of each element of a crime by substantial evidence beyond a reasonable doubt, it is not the State's burden to prove the existence of a mitigating factor.

■ We have recently upheld a conviction for voluntary manslaughter in the complete absence of sudden heat, recognizing the long standing rule in Indiana that voluntary manslaughter is a lesser included offense of murder and one of which one may be convicted if charged with murder. *Hardin v. State*, (1980) Ind., 404 N.E.2d 1354, 1357. Appellant seeks to circumvent this barrier to review by averring that the error is fundamental. He presents neither supporting authority nor cogent argument on this claim of fundamental error. The sole citation is to *Rowe v. State*, (1968) 250 Ind. 547, 237 N.E.2d 576, on the substantive issue of the impropriety of admitting evidence of family relations. There, however, the admission of evidence was properly objected to and therefore reviewable. This issue has not been preserved for appeal.

IV.

Appellant next claims error in that the trial court sustained the State's objections to defense evidence on the grounds that it was hearsay. By referring to the specifications in the motion to correct errors we assume that appellant refers to two occasions: (1) when he made an offer of proof as to testimony of a defense witness, Mrs. Gray, concerning a phone call she received from Rachelle Hunter, the daughter of the victim's sister-in-law, and (2) when he attempted to introduce a copy of a deputy coroner's field report.

■ After generalizing about the nature of hearsay, and that some statements are admissible under exceptions to the hearsay exclusion rule, appellant makes no reference at all to Mrs. Gray's testimony in his argument. Having failed to argue this is-

sue with specificity as required by Ind.R. App.P. 8.3(A)(7), he has forfeited it on appeal. We observe briefly, however, that Mrs. Gray's testimony was to have been that Rachelle Hunter telephoned her to say that Walter Hunter had been shot and that Mrs. Gray should come to the scene of the shooting, and that the purpose of the testimony was to establish why Mrs. Gray went to the Hunter house. The transcript shows that Mrs. Gray had already testified that Rachelle Hunter had called her to tell her "that there had been a killing." Therefore, the gist of the excluded testimony had already been given. The State objected to Mrs. Gray's testifying about what Rachelle had said, on hearsay grounds, but the testimony was not stricken and the jury was not admonished to disregard it. Even if we could say that the evidence had been entirely excluded, it was certainly excludable as irrelevant, since Mrs. Gray's motive for going to the Hunter house was not a material issue in the case.

■ Concerning the other excluded item of evidence, referred to in appellant's brief only as a report prepared by the deputy coroner who had been called to the scene, appellant argues that it was either not hearsay or fell within an exception to the hearsay rule and should have been admitted. By referring to the motion to correct errors we can infer that appellant alludes to his exhibit F, the deputy coroner's field report.

This report was identified by deputy coroner Osborne who prepared it. It purportedly showed that someone at the scene of the shooting told Osborne that a man other than appellant was seen leaving the scene with a shotgun. Appellant states that this report was passed on to the police files and contained information that would have required further investigation by the police. The failure by the police to pursue evidence that someone other than defendant might have done the shooting, appellant suggests, would, if fully presented to the jury, have cast serious doubt on the validity of the police investigation of the incident. The jury, he continues, was deprived of essential evidence relevant to the defense theory of the case, which was that Harold Hunter shot the victim, Walter Hunter, and then disposed of the shotgun by having another man take it from the scene.

The evidence, appellant claims, was being offered to show that the State had certain information, regardless of its truth, which the jury should have been permitted to consider in determining whether the State had proved its case or had sought to hide exculpatory evidence.

The transcript reveals that Exhibit F was deputy coroner Osborne's handwritten report of his findings at the shooting scene, including both his examination of the body and information obtained from other people with whom he talked at the scene. The State objected to the introduction of the report in the course of Osborne's testimony on the grounds that it contained hearsay, and the objection was sustained. Osborne then testified, "I was told by someone that someone had run from the scene." Again the State objected on hearsay grounds and the objection was sustained, but the testimony was not stricken from the record and the jury was not admonished to disregard it. Appellant then made an offer to prove outside the presence of the jury in the course of which he related that the purpose of admitting the statement of what someone told Osborne was to show that Osborne had written the statement in his notes and had given his report to Sgt. Hoke, who denied having knowledge of such information. Thus, the document would have impeached Hoke's credibility. There is, however, no evidence that Sgt. Hoke had Exhibit F in his file on the case. Sgt. Hoke was called as a defense witness and testified about defendant's Exhibit C, described as a deputy coroner's field report, a document not bearing Osborne's name. Later Osborne also testified regarding this document which he described as a "code-a-phone" report prepared by coroner's office staff from information he telephoned in to the coroner's office.

There is no evidence that Sgt. Hoke had Exhibit F in his file, or that Exhibit C

contained the same information as Exhibit F. Therefore, Exhibit F could not perform the evidentiary function of impeachment for which it was offered and was irrelevant. There was no error in excluding this evidence.

## V.

Finally, appellant argues that the trial court committed reversible error in overruling defense objections to the admission into evidence of several photographs depicting the body of the victim, and the immediate area of the porch where the decedent was shot.

Conceding that a trial judge has considerable latitude in determining admissibility of possibly prejudicial evidence, appellant asserts that the potential prejudice of such a gruesome display outweighed its relevance. Appellant does not discuss his specific objections to the photographs in issue but avers that the photographs were merely cumulative of photographs already admitted without objection and that "[t]he danger of repulsiveness and jury prejudice was real...."

Our review of the record convinces us that these photographs, although gruesome, were properly admitted. State's Exhibit 6 depicted the nature and extent of the shotgun wound inflicted on the victim and it showed where shotgun wadding, State's Exhibit 15, was found. This wadding was from the same gauge shotgun as the one appellant was seen tossing behind the victim's house after the shooting. Exhibits 7, 11, and 12 are photographs of the crime scene, and 7 and 12 show where more wadding was discovered. A witness would have been permitted to testify about the things depicted in the photographs and they assisted the jury in orienting themselves and understanding other evidence. See, e. g. *Whitfield v. State, supra.* The trial court did not err in admitting these photographs.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.