Charles R. MALOTT, Appellant,

v.

STATE of Indiana, Appellee.

No. 584S184.

Supreme Court of Indiana.

Dec. 3, 1985.

880

John D. Clouse, Michael C. Keating, Laurie A. Baiden, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from a jury conviction for burglary resulting in bodily injury, a class A felony, Ind.Code § 35–43–2–1 (Burns 1985 Repl.), attempted murder, a class A felony, Ind.Code § 35–42–1–1 (Burns 1985 Repl.) and Ind.Code § 35–41–5–1 (Burns 1985 Repl.), and two additional burglary counts, class C felonies, Ind.Code § 35–43–2–2 (Burns 1985 Repl.).

Defendant-appellant Malott received an aggregate prison term of fifty years: a fifty-year sentence for the class A burglary to be served concurrently with a fifty year sentence imposed for attempted murder and with two eight year sentences imposed for the burglaries.

Appellant raises six issues on appeal: (1) Whether the prospective jurors' viewing of appellant while manacled necessitated discharge of the jury panel; (2) Whether the statements which appellant gave to the police were made voluntarily; (3) Whether an inadequate foundation rendered specified State's exhibits inadmissible; (4) Whether the trial court improperly refused to instruct the jury that attempted voluntary manslaughter and battery with a deadly weapon are lesser and included offenses of attempted murder; (5) Whether there is

sufficient evidence to establish the breaking element required for a burglary conviction; and (6) Whether imposition of sentences for both attempted murder and burglary resulting in bodily injury was erroneous.

These are the facts which tend to support the determination of guilt. On August 18, 1983, Ruth Hacker, an employee of Munnier Electric, locked the store at closing time. When she left the store the windows were intact, the safe was locked, and the cash drawer was placed underneath the cash register.

On August 19, 1983, George Munnier was awakened at 3:30 a.m. when the security alarm from his appliance store was activated. Armed with a .45 pistol, Munnier proceeded to investigate. After noticing a broken window on the northeast corner of the building, Munnier asked his wife to call the police. Munnier returned to the building to keep guard until the police arrived. Suddenly Munnier heard a loud sound behind him and observed appellant crashing out of the bathroom window on the west side of the building. Munnier told appellant to stop and informed appellant that he was armed. Appellant immediately fired shots at Munnier, who sustained two gunshot wounds which caused injury to his colon, liver, diaphragm, stomach, and both lungs. Munnier returned fire, but appellant escaped by running away in a westerly direction from the appliance store. After calling an ambulance, the police proceeded west in pursuit of appellant.

A number of local and State police officers converged on the area in search of appellant. Appellant, who was also wounded, was apprehended within fifteen minutes in the yard at the Weber residence, which is located three blocks southwest of the appliance store.

After handcuffing appellant at the Weber residence, the police confiscated his gun, a pair of brown gloves, a dark colored ski mask, a flashlight, a holster, and two envelopes labeled Gibson T.V. Incorporated. When investigating the vicinity around the appliance store, the police recovered a blue denim sleeveless jacket from the yard of the Kruse residence located two houses west of the appliance store. Inside the denim jacket the police found assorted tools and a money bag labeled "Hoefling's Texaco."

At 4:00 a.m. on August 19, 1983, Hacker was requested to come to Munnier's store because she had the keys. When she went inside she observed two broken windows, the cash drawer was on the floor minus the $85 which it had contained, and the safe was open with its contents strewn on the floor.

In addition to Munnier Electric, three other businesses located nearby were also burglarized that evening: Gibson Cable T.V., Hoefling's Texaco, and J.C.'s Drive-in. Gibson Cable T.V. rents space in the Munnier Electric Building. The manager, Michael Kieffer, testified that the chainlink fence used to partition Cable T.V. from Munnier Electric was torn completely from the wall. Inside the Cable T.V. store the contents of the secretary's desk were found on the floor. In addition, the money box was lying on the floor opened, as was the deposit bag and petty cash box. A total of $128.38 was missing.

James Verley, an Indiana State Police firearms examiner, testified that a ballistics test indicated the bullet retrieved from appellant's body was fired from Munnier's gun.

I

Appellant contends that the trial court erred by denying his motions to discharge the jury panel and to declare a mistrial. These motions were based upon prospective jurors having observed appellant in handcuffs and leg irons. He claims that the prospective jurors would perceive him as an incarcerated and potentially dangerous person. Appellant contends that admonitions to extinguish this impression would be ineffectual and therefore the presumption of innocence was lost.

Appellant was manacled when the police escorted him from the county jail to the

courtroom hallway where prospective jurors were waiting. Prior to commencement of voir dire, defense counsel made the motion to discharge the prospective jury and declare a mistrial. Appellant testified to the aforementioned facts at a brief pretrial hearing which was held on these motions. After argument by defense counsel, the trial court denied appellant's motions, but did voir dire on the specific question. The trial court also accorded both defense and prosecution an additional five minutes for voir dire.

■ A prisoner is entitled to be brought into the court room unrestrained unless shackles are necessary "to prevent the escape of the accused, to protect everyone in the courtroom, and to maintain order during the trial." *Walker v. State* (1980), 274 Ind. 224, 229, 410 N.E.2d 1190, 1193. The accused's freedom from shackles is an important component of a fair and impartial trial, however, essential fairness is not necessarily lost by the potential jurors' observation of him in a restrained state while he is being transported from the jail to the courtroom. *Jessup v. State* (1971), 256 Ind. 409, 269 N.E.2d 374. Potential jurors would reasonably expect that anyone in police custody would be restrained, regardless of the precise nature of the charge against the accused. The trial court's voir dire on this question minimized any potential for prejudice. Moreover, appellant was not restrained during the trial proceedings. Under these circumstances, the fairness and impartiality of appellant's trial was adequately preserved.

## II

Appellant argues that the statements which he made to the police were not voluntary. This argument is predicated upon two claims: one, appellant's physical condition at the time he gave his statements and, two, an alleged perfunctory *Miranda* advisement.

While the police proceeded west in pursuit of appellant, Officer Hedges observed appellant kneeling on the grounds of the Weber residence, which is located three blocks southwest of Munnier Electric. Hedges told appellant to drop his weapon and stand up. Officer Sides walked toward appellant and then handcuffed appellant. Appellant informed the police that he had been shot. The police checked appellant for wounds and then called an ambulance. The police then carefully removed appellant from the Webers' backyard to the street and waited for an ambulance. After the ambulance arrived, the police assisted in placing appellant into the ambulance. Officer Bube accompanied appellant in the ambulance ride to the hospital. Appellant talked continuously and spontaneously throughout his apprehension and transportation to the hospital, oftentimes complaining that the location of the handcuffs behind his back caused him pain. Officers Sides and Clark testified that appellant appeared to be coherent, alert, and appreciative of the statements made.

Appellant maintains the trial court erred by allowing police testimony regarding the following statements which he made to the police:

(1) When appellant was first apprehended he informed the police that he had been shot and complained about his injuries;

(2) While appellant was being carried to the street and before he was Mirandized, appellant told Sides that the man at the store shot him;

(3) After carrying appellant to the street, Sides advised appellant of his *Miranda* rights. While appellant was being placed into the ambulance he stated, in Sides' presence, that he "did not mean to hurt anybody.";

(4) While appellant was lying on the ground by the Weber residence he stated, in Officer Clark's presence, that there was a pick-up truck and a suitcase or a bag which he left on County Road 150. He also stated that the reason he was in the building was because he "is a f------ burglar."; and

(5) During the ambulance ride appellant told Officer Bube he had worked alone in this burglary and shooting, had gone by the Munnier Electric store three or four times prior to entering the building, and had gone into Munnier Electric looking for money.

The police testified that appellant's statements one through four were volunteered and were not elicited by police questioning.

The *Miranda* procedural safeguards apply only to custodial interrogations. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Custodial means a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. Not all statements obtained by the police from a person in custody are the product of interrogation. Interrogation occurs when a person in custody is subjected either to express questioning or its functional equivalent, and reflects a measure of compulsion above and beyond that inherent in custody itself. *Staton v. State* (1981), Ind., 428 N.E.2d 1203. Voluntary statements which are not the result of custodial interrogation contemplated by *Miranda* are properly admitted into evidence. While appellant was in custody, his first four statements were not the product of interrogation. The officers neither questioned appellant nor engaged in conduct designed to elicit a self-incriminating response from appellant. Statements thus freely, voluntarily, and spontaneously volunteered are admissible in evidence. *New v. State* (1970), 254 Ind. 307, 259 N.E.2d 696. Advisement of the *Miranda* rights is not a condition precedent to the admissibility of either custodial or noncustodial statements which are volunteered. *Johnson v. State* (1978), 269 Ind. 370, 380 N.E.2d 1236. Statements one through four were properly admitted as volunteered statements. There is also no merit to appellant's contention that his physical condition at the time he made his statements rendered his statements involuntary. Merely being handcuffed with his hands behind his back when he gave his statements does not render the statements involuntary. *Wolfe v. State* (1981), Ind., 426 N.E.2d 647.

Statement five, however, was taken in violation of the *Miranda* procedural safeguards and therefore was improperly admitted into evidence at appellant's trial. After appellant was advised of his constitutional rights, the officer asked appellant whether he understood these rights. Despite appellant's unequivocal negative response, the police interrogated him. The product of this interrogation is statement five. While statement five should have been excluded, its admission into evidence at appellant's trial was harmless error beyond a reasonable doubt. *Chapman v. United States* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. The composite of appellant's first four statements, which were properly admitted at trial, is the practical equivalent of the substance of statement five, without regard to additional testimony or evidence which was presented at his trial. *Lloyd v. State* (1983), Ind., 448 N.E.2d 1062; *Music v. State* (1981), Ind., 427 N.E.2d 1071; *Greer v. State* (1969), 252 Ind. 20, 245 N.E.2d 158. Appellant was not therefore burdened by the admission of statement five. The introduction of this statement neither forced appellant to take the stand to deny the substance of the statement nor constricted defense counsel's choice of trial tactics.

Appellant also claims that State Exhibits 10–W, 10–X, and 10–Y, photographs of a pick-up truck and a bag, should not have been admitted into evidence because the location of these items was obtained by conversations violative of *Miranda*. This evidence was seized as a result of information contained within appellant's statement four. Insofar as statement four was properly admitted as a volunteered statement, the exhibits were also properly introduced into evidence.

### III

Appellant claims that the trial court erred by admitting the following State Exhibits:

(1) *Number 11:* a sealed brown bag containing exhibit 11A, a .357 magnum revolver;

(2) *Number 11–B:* a sealed plastic bag containing six .357 magnum shells;

(3) *Number 12:* a sealed brown bag containing a brown leather holster;

(4) *Number 21–A:* a sleeveless denim jacket;

(5) *Number 22:* a sealed brown bag containing exhibit 22A, a ten-inch pipe wrench;

(6) *Number 23:* a sealed plastic bag containing tools;

(7) *Number 24:* an orange Texaco money bag; and

(8) *Numbers 25, 26, and 27:* sealed evidence envelopes containing $22.65, $54.58, and $24.05, respectively.

Appellant contends that the State did not sufficiently connect appellant with the aforementioned exhibits and therefore the evidence was irrelevant.

The magnum revolver was found by Trooper Wessel ten feet west of the rear window of Munnier's store. When appellant was apprehended on the Webers' yard, Officer Hedges observed appellant throw the brown leather holster a short distance away. When the holster was recovered by the police there was blood on it. Lacey, an Indiana State Police serologist, examined the holster for blood stains. Lacey compared the blood stains on the holster with blood samples taken from appellant and Munnier. Lacey testified that the blood stains on the holster were consistent with appellant's blood type, a blood type which is common in less than one-percent of the population, or approximately two in one-thousand individuals. The sleeveless denim jacket was found by the police at the Kruse residence. Boaz, an Indiana State Police chemist, conducted a glass identification and comparison with glass fragments removed from this jacket and glass from the west rear window and north window of Munnier's store. Boaz concluded that the glass found on the jacket was similar and strongly suggested that it came from the same glass pane as the north window of Munnier's store. In addition, earlier the same morning the crimes were committed Officer Michas had seen appellant wearing a similar sleeveless denim jacket. The pipe wrench, tools, money bag, and money were found either inside or near the denim jacket.

■ The State must establish the following foundation before an item of physical evidence may be admitted: (1) the foundation witness must state that the instrumentality is at least like the one associated with the crime and (2) evidence must establish that the instrumentality is connected to defendant and the commission of the crime. *Hooper v. State* (1983), Ind., 443 N.E.2d 822. Appellant challenges the connection test of the State's foundation for the aforementioned exhibits. However, the degree of logical connection which an item of evidence must have with the accused to satisfy the evidentiary requirement of relevance has previously been stated by this Court. The State need not establish that the evidence was positively in the possession on the accused in order for the instrumentality to be admissible. Rather, any evidence having even a slight tendency to prove a material fact is sufficiently relevant to be admitted. The physical evidence need only constitute a small but legitimate link in the chain of evidence connecting appellant with the crime. *Candler v. State* (1977), 266 Ind. 440, 363 N.E.2d 1233.

■ Exhibits listed as two through eight were sufficiently connected to both appellant and the crime. There was no specific foundation laid to link appellant with the magnum revolver. However, the revolver was properly admitted as evidence to faithfully reconstruct the crime scene. The inconclusive connection with appellant affects the weight, not the admissibility. *Carman v. State* (1979), 272 Ind. 76, 396 N.E.2d 344. There was no error in the admission of these exhibits.

IV

Appellant argues that the trial court erred by refusing to instruct the jury that

attempted voluntary manslaughter and battery by means of a deadly weapon are lesser and included offenses of attempted murder.

The trial court's decision whether to instruct upon lesser and included offenses embodies two separate steps. The first step requires an examination of the statutes and the charging information or indictment to determine therefrom whether it is impossible to commit the greater offense without first having committed the lesser offense. The second step is to examine the evidence presented at trial regarding the element which distinguishes the two offenses. *Bedgood v. State* (1985), Ind., 477 N.E.2d 869; *Lawrence v. State* (1978), 268 Ind. 330, 375 N.E.2d 208.

> The relevant statutes recite, in pertinent part: *35–41–5–1 Attempt:* (a) A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime.
>
> *35–42–1–1 Murder:* A person who: (1) knowingly or intentionally kills another human being, or (2) kills another human being while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape, or robbery; commits murder.
>
> *35–42–1–3 Voluntary Manslaughter:* (a) A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter. (b) The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder.
>
> *35–42–2–1 Battery:* A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a class B misdemeanor. However, the offense is (3) A class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon.

■ While voluntary manslaughter can be a lesser and included offense of murder, *Russell v. State* (1981), 275 Ind. 679, 419

N.E.2d 973, attempted voluntary manslaughter was not a lesser and included offense of murder in this case. The statutory and pleading step of the *Lawrence* standard may have been satisfied. However, the intent to kill element in murder is mitigated by the sudden heat encompassed within a voluntary manslaughter offense. In the case at bar there was no evidence of sudden heat.

■ Battery by means of a deadly weapon is not a lesser included offense of attempted murder in all of its statutorily prescribed forms. However, based upon the attempted murder charging information which alleged the infliction of grave wounds, battery is clearly a lesser included offense. The intent is the element which distinguishes attempted murder (intent to kill) from battery with a deadly weapon (intent to touch). There was no evidence presented of a state of mind consistent with an intent to only touch. The evidence did not warrant the lesser included offense instructions which appellant requested.

V

■ Appellant argues that there is insufficient evidence to establish the breaking and entering element of burglary, Count III.

On August 19, 1983, Officer Perkins investigated the burglary at Hoefling's Texaco. Mr. Hoefling advised Perkins that $30 had been taken from his business. State's Exhibit Number 24 was identified by Hoefling as the money pouch which he keeps in his cash register. Hoefling showed Perkins the north window where Hoefling believed entry had been made. A small piece of glass had been broken on the lower portion of the window which is close to the location of the window handle. The evidence neither indicates when Hoefling's money pouch was taken nor sufficiently establishes a breaking and entry. This conviction is not supported by the evidence.

VI

■ Appellant claims that the imposition of sentences for both attempted mur-

der and burglary resulting in serious bodily injury constitutes multiple punishment for one resultant injury.

The burglary information alleged appellant broke and entered a building owned by George Munnier with the intent to commit a felony therein (theft), and that this burglary resulted in serious bodily injury to George Munnier. The attempted murder information alleged that appellant attempted to commit the crime of murder by knowingly shooting George Munnier, thereby inflicting grave wounds and such conduct constituted a substantial step toward the commission of murder.

In accordance with the burglary statute, burglary may be enhanced to a class A felony where it "results in either bodily injury or serious bodily injury to any person other than a defendant." Ind.Code § 35-43-2-1 (Burns 1985 Repl.). However, the resultant serious bodily injury to Munnier in the burglary information, and the infliction of grave wounds upon Munnier alleged in the attempted murder information, are both based upon appellant's single act of shooting George Munnier when appellant exited Munnier's store. The attempted murder charge and the enhanced burglary charge are predicated upon the same underlying injury which appellant inflicted upon Munnier. To impose punishment for the same injurious consequences sustained by the same victim and inflicted by appellant's singular shooting is violative of both federal and state double jeopardy prohibitions. *Flowers v. State* (1985), Ind., 481 N.E.2d 100; *Smith v. State* (1985), Ind., 475 N.E.2d 27 (DeBruler, J., concurring opinion); *Bevill v. State* (1985), Ind., 472 N.E.2d 1247.

We therefore hold that appellant's conviction and sentence for class A burglary must be vacated. Since there was no allegation of a deadly weapon or burglary of a dwelling in the burglary information, the cause is remanded with instructions that a conviction and sentence for a class C burglary be entered in its stead. The burglary conviction in Count III is reversed. In all other respects the convictions are affirmed.

GIVAN, C.J., and PRENTICE, SHEPARD, JJ., concur.

PIVARNIK, J., concurs on all issues except VI.

PIVARNIK, J., dissents on issue VI for reasons stated in his dissent in *Bevill*.