Frederick GREENE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1185S457.

Supreme Court of Indiana.

Dec. 4, 1987.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Frederick Greene appeals his conviction for kidnapping, a class A felony, Ind.Code § 35–42–3–2(a)(4) (Burns 1985 Repl.). The trial court sentenced him to a thirty-year term to run consecutively to his previous sentence on unrelated charges.

Greene's most recent conviction arose from an uprising in the administrative segregation and detention unit of Michigan City prison. The trouble began in mid morning when Greene and three other inmates rushed inside a guard office in the administrative segregation unit as a guard opened the gate for a porter. Greene was the first inmate through. He grabbed the guard around the throat and pushed him against the wall. Greene's fellow inmates subdued the other guards and secured control over the unit. Greene and the others who rushed the office handcuffed the guards and locked them in cells.

Prison officials learned of the takeover and took steps to lock down the rest of the penitentiary. Despite their efforts, the officials could not secure the cellhouse next to the prisoner-controlled unit. Inmates took control of the adjacent cellhouse and moved the guards from that cellhouse to the unit where the other guards were locked up. In the interim, officials successfully secured the rest of the prison and sought to open communications with the rebellious prisoners.

Inmate Eddie Hill told the officials not to enter the unit. He said if they tried, the guards would be killed. The prisoners had a list of demands to be met before they would release the hostages. Throughout the day, the inmates and prison officials negotiated. Greene never participated in any negotiations.

In the early evening hours, one of the inmates took Daniel Easton, a guard, from his cell and handcuffed him to another inmate. The inmates showed Easton that in each cell an inmate was with a guard. In one of the cells, Easton saw Greene sitting with a guard. Greene had an iron bar with a hook on top in his hand. The inmates told Easton that the guards would be killed if prison officials rushed the unit. The inmates then released Easton and another guard.

By the next morning, ten representatives of the inmates agreed to release the rest of the guards on three conditions. First, prison officials would not punish any of the inmates involved. Second, they would permit the prisoners four meetings at which inmates could air their grievances before the media. Third, the officials would reevaluate the administrative segregation and detention sentences imposed by the Conduct Adjustment Board.

Although the representatives agreed to those terms, the remaining inmates initially balked. They wanted complete amnesty. Prison officials refused to budge on the issue, contending that the prosecutor decided whether charges should be brought and against whom. The inmates argued among themselves. Finally, they accepted the

agreement and released the remaining guards.

Greene presents eighteen issues on direct appeal. We consolidate them into six. The first and most novel issue is whether the trial court erred when it denied his pretrial request to be released from administrative segregation.

## I. *Release from Segregation*

■ Prison officials place inmates who are a safety risk in administrative segregation, which limits their recreation time and restricts their movement. They are not permitted to visit other prisoners in the general population or make trips to the prison law library. They can request that a library assistant come to see them and may visit with outsiders, including their attorneys, as often as they like.

Greene was in segregation prior to the kidnapping charge and remained there because of it. Greene requested that the trial court order him released to the general prison population. He said administrative segregation inhibited his efforts to assist in his defense by limiting his ability to do research in the library and by prohibiting his talking with witnesses who were in the general prison population. He also said that being kept in chains and shackles made it more difficult for him to concentrate when talking to his attorney.

Greene argues the kidnapping charge is an insufficient governmental interest to justify subjecting him to administrative segregation, citing *Lock v. Jenkins*, 641 F.2d 488 (7th Cir.1981). *Lock* is inapplicable for two reasons. First, it deals with a pretrial detainee and not an inmate already incarcerated for an earlier conviction. Second, *Lock* is a civil action under 42 U.S.C. § 1983. Because this is a criminal case, the issue is whether the administrative segregation unconstitutionally hindered his defense, not whether Greene is entitled to civil relief.

We find precedent in *Shoulders v. State* (1984), Ind., 462 N.E.2d 1034. Prison officials placed inmate Shoulders in administrative segregation after he was involved in a fatal stabbing. Shoulders argued the segregation limited him in interviewing witnesses and seeking assistance of counsel for his defense. This Court held Shoulders had not demonstrated that segregation denied him access to his attorney or potential witnesses. *Id.* at 1036.

Similarly, segregation did not impede Greene's defense. Greene had unlimited access to his attorney. He could request a library assistant to see him. Greene said the privilege was illusory because no one ever responded to his request. Greene, however, had his own attorney doing research thereby alleviating any prejudice he might have suffered by not having access to the library. Nothing in the record indicates prison officials denied Greene's attorney an opportunity to interview any witness in the general prison population who, though not available to Greene, might have proved helpful for his defense.

In the absence of any deprivation that affects Greene's fair trial rights, we doubt a trial court has authority to order Greene's release into the general prison population. Greene cites Ind.Code § 35–2.1–2–2 (Burns 1979 Repl.) for the proposition that a trial court has discretion to determine where a defendant already confined in a state institution shall be detained pending trial. The statute allows the court to specify a suitable place where the defendant shall be held before and during a criminal proceeding "upon application of the prosecuting attorney." Here the prosecutor never sought to move the defendant. The purpose of the statute is to secure the attendance of defendants at trial. The statute is not an adequate basis upon which to order prison officials where to locate inmates within prison walls. The trial court properly denied Greene's motion for release from administrative segregation.

## II. *Sufficiency of Evidence*

■ A person who knowingly or intentionally confines another with the intent to use the person confined as a shield or hostage commits kidnapping, a class A felony. Ind.Code § 35–42–3–2(a)(4). Greene claims the evidence of his intent to use the confined guards as a shield or hostage is insuf-

**1380**

ficient to support the kidnapping conviction. He argues he aided in the confinement without an intent to use the guards as hostages and only later did other inmates seize upon the plan to use them as bargaining chips. He bolsters his argument by showing he never negotiated with the prison officials for the release of the guards.

Appellate review of evidence is limited. This Court neither reweighs the evidence nor judges the credibility of witnesses. *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. We look to the evidence favorable to the verdict and draw reasonable inferences in its support. Because intent is a mental function, it often must be determined from a person's conduct and the natural consequences of that conduct. *Cole v. State* (1980), 273 Ind. 277, 403 N.E.2d 337. The jury could reasonably infer from Greene's actions he intended to use the guards as hostages. Greene led the initial takeover, and Easton saw him watching over a guard. The evidence is sufficient to support the conviction.

### III. *Pretrial Motions*

Greene claims the trial court erred when it denied three of his pretrial motions. The first was a motion to dismiss the charge alleging selective prosecution. The second was a petition for expert witness funds. The third was a motion *in limine.* The trial court did not err in any of these rulings.

Greene argues the state selectively prosecuted him in violation of the Equal Protection Clause. While both black and white inmates eventually participated in the uprising, the State only prosecuted six black inmates. The prosecutor brought charges against Greene and the three other inmates who rushed the guard office, inmate Hill who threatened to kill the guards if the prison officials entered the building, and one other black inmate. One of Greene's codefendants raised the same issue on direct appeal. *Love v. State* (1984), Ind., 468 N.E.2d 519, *cert. denied,* 471 U.S. 1104, 105 S.Ct. 2335, 85 L.Ed.2d 851. This Court found no error in that case, and we see no reason to reach a different result today.

Greene petitioned the court for funds to hire a psychiatrist who could describe the effects of long-term solitary incarceration on his ability to form criminal intent. The trial court denied the motion. The decision whether an accused is entitled to an expert witness at public expense lies in the sound discretion of the trial court. *Wisehart v. State* (1985), Ind., 484 N.E.2d 949. At trial Greene did not present any other evidence of his "diminished capacity" and we see little prejudice from the denial of his motion. The trial court did not abuse its discretion.

Greene asserts the trial court erred when it ruled on motions *in limine* filed by the State and the defense. A motion *in limine* is not a final ruling on the admissibility of evidence. It serves to prevent the display of prejudicial material to the jury until the trial court has the opportunity to make an evidentiary ruling within the trial context. While the final evidentiary ruling is appealable, a ruling on a motion *in limine* preserves nothing for appeal. *Hadley v. State* (1986), Ind., 496 N.E.2d 67.

### IV. *Evidentiary Rulings*

Greene objected to a number of the trial court's evidentiary rulings. He argues on appeal the trial court erred when it admitted hearsay, accepted three exhibits into evidence, allowed the state to reopen direct examination, and permitted references to the confined guards as hostages. Mindful of the deference appellate courts grant to trial court's evidentiary rulings, we address each of these arguments.

A. *Hearsay.* The trial court admitted two hearsay statements over Greene's objection. One was Warden Duckworth's statement that he overheard a telephone conversation between the inmates in the administrative segregation unit and the adjacent cellhouse. Duckworth testified that an unknown inmate said, "Hey, man, we may have to waste one of these dudes." The other statement came in through guard Easton's testimony. According to

Easton, inmate Jessup said, "They want you to see that there is an inmate in each cell with the officers. That if anything happens before anybody could get to 'em, they would be killed."

■ Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted within the statement. The State offered the two statements to prove that the inmates used the guards as hostages in the negotiations. As such, it is inescapable that they are hearsay.

Although the hearsay should not have been admitted, Greene suffered no prejudice from the statements. Earlier testimony established that the prisoners threatened to kill the guards if their demands were not met. Admitting the hearsay was harmless.

B. *Exhibits.* The trial court admitted three exhibits which Greene claimed were insufficiently connected to him: a list of demands from the prisoners, a knife used by an inmate in the initial takeover, and an iron bar with a hook similar to the one Easton saw in Greene's hand.

■ The State need not establish conclusively that the evidence was positively in the possession of the accused in order for the evidence to be admissible. *Malott v. State* (1985), Ind., 485 N.E.2d 879. Physical evidence need only constitute a small but legitimate link in the chain of evidence connecting the defendant with the crime. *Hudson v. State* (1986), Ind., 496 N.E.2d 1286. Any inconclusive connection to the defendant affects the weight, not the admissibility.

■ The trial court admitted, over Greene's objection, the prisoners' demands. Greene argues he had nothing to do with the writing of the demands or the passing of them to prison officials. Any evidence having even a slight tendency to prove a material fact is sufficiently relevant to be admissible. *Malott,* 485 N.E.2d at 884. The list of demands meets this minimal test.

■ The trial court also admitted a knife used by one of the inmates who rushed the prison office with Greene.

Greene argues the knife was inadmissible because it was never seen in his possession. The jury could infer from the evidence that Greene acted in concert with the inmate who carried the knife. *Proctor v. State* (1979), 272 Ind. 357, 397 N.E.2d 980 (gun used by one robber admissible in trial of alleged accomplice who did not carry gun). The trial court properly admitted the knife.

■ As for the iron bar, Greene argues the State failed to establish the bar was the one Greene actually had in his hand when guard Easton saw him. Even if the bar is not the actual one, Greene was not prejudiced by its admission. Easton had already testified he saw a similar iron rod in Greene's hand, and the jury properly realized the iron bar might not have been the actual one he had in his hand. Any tangential connection of the rod to Greene goes to the weight of the evidence and not its admissibility.

■ C. *Reopen Direct Examination.* Greene contends the trial court abused its discretion by allowing the State to reopen direct examination of Easton following a lunch recess immediately prior to which the prosecution said it had no further questions. He argues the action prejudiced him because the knife and the iron rod were admitted during the reopened direct. The decision to permit the state to reopen direct examination rests with the discretion of the trial court. *Scott v. State* (1982), Ind., 434 N.E.2d 86. Without more, this is not an abuse of discretion.

■ D. *References to Hostages.* The trial court permitted witnesses to refer to the confined guards as hostages. Greene alleges error because a person's intent to commit a crime is a question for the jury and reference to hostages is a conclusion not properly expressed by witnesses.

No sharp line distinguishes fact from opinion. Statements of fact denote merely a difference in the degree of concreteness. E. Cleary, *McCormick on Evidence* § 12, at 30 (3d Ed. 1984). It is not clear the witnesses were even expressing an opinion by referring to the confined guards as hos-

tages. Nonetheless, no prejudice arose from the reference because Greene's defense did not deny the guards were hostages. Greene simply tried to show he had no intent to use the guards as hostages.

We uphold the trial court's evidentiary rulings.

## V. *Preliminary and Final Instructions*

Greene tendered preliminary and final instructions. The trial court refused his preliminary instructions and some of his final instructions. Greene invites this Court to find the rejection of the instructions as error. We decline.

▉ The first preliminary instructions Greene tendered set out the elements for the lesser included offense of criminal confinement. Potential lesser included offenses are not appropriate for preliminary instruction. *Brooks v. State* (1986), Ind., 497 N.E.2d 210. A trial court simply cannot determine whether an instruction on a lesser included offense is proper prior to hearing the evidence. Greene's other preliminary instructions were covered by the court's preliminary instructions and by the final instructions. *See Everly v. State* (1979), 271 Ind. 687, 395 N.E.2d 254 (if evidence indicates omitted preliminary instruction would have been appropriate, final instruction can rectify matter).

▉ To review the denial of tendered final instructions, this Court employs a three-part test. The tendered instruction must correctly state the law, it must be supported by evidence, and it must not be covered by other instructions. *Pavey v. State* (1986), Ind., 498 N.E.2d 1195. The instruction must meet all three criteria to be appropriate.

▉ Greene's tendered instruction No. 2 defined direct evidence, circumstantial evidence, inference, and ended with a statement that circumstantial evidence "must be of such a character and strength as to exclude every reasonable hypothesis except that of defendant's guilt." The trial court gave most of the tendered instruction as final instruction No. 19 but excluded the last portion. The later part of Greene's instruction is an incorrect statement of the law. *Mills v. State* (1987), Ind., 512 N.E.2d 846 (circumstantial evidence need not exclude every reasonable hypothesis of innocence).

▉ Greene's tendered instruction No. 3 stated, "It is no crime whatsoever to be present at another person's commission of a crime. In this case, unless you find that the defendant committed the acts charged against him and is guilty beyond a reasonable doubt ... you must find him not guilty." The trial court denied the instruction but gave a similar one. Final instruction No. 15 read, "It is no crime merely to be present at another person's commission of a crime, but the presence of a person in companionship with another person engaged in commission of the crime ... may be considered by the jury in determining whether the first such person also committed said crime." Despite some differences, Greene's tendered instruction No. 3 was adequately covered by final instruction No. 15.

▉ Greene's tendered instruction No. 13 provided: "Where a party suppresses or destroys evidence in its control, it is presumed true that the production of that evidence would be against the interest of that party." Warden Duckworth testified that one of the negotiating sessions had been videotaped, and a prison investigator taped some statements he took from witnesses. Both tapes were reused. Nothing in the record indicates the prison officials intentionally destroyed the evidence. Many people were at the negotiating session and if something relevant to Greene's defense occurred another witness could have testified about it. The evidence does not support giving an instruction on the negligent or intentional destruction of material evidence. The jury should not have presumed production of the tapes was against the interest of the State.

The trial court did not err in refusing any of Greene's instructions.[1]

**1.** Greene challenged the trial court's denial of two other tendered instructions. Tendered instruction No. 8 commanded the jury to disregard the knife admitted as State's Exhibit No.

## VI. *Sentencing*

■ Finally, Greene claims that in imposing a thirty-year sentence, the trial court failed to consider a number of mitigating circumstances.

The jury found Greene guilty of kidnapping, a class A felony. A class A felony carries a presumptive term of thirty years; a trial court can add twenty years for aggravating circumstances or subtract ten years for mitigating circumstances. Ind. Code § 35–50–2–4. The trial court imposed the presumptive sentence. "When the trial court imposes the presumptive sentence for an offense this Court presumes that the court considered ... the nature and circumstances of the crime committed...." *Hammons v. State* (1986), Ind., 493 N.E.2d 1250, 1254. The trial court did not err when it sentenced Greene.

The trial court is affirmed in every respect.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.

2 because it had "been stricken from the record ... [and] is no longer evidence against the defendant." We have ruled the trial court properly admitted the knife. Tendered instruction No. 12 directed the jury to disregard all testimony and physical evidence of inmates other than Greene. The tendered instruction also said such evidence had been stricken from the record. The trial court did not strike either the knife or the other evidence. Therefore, the trial court did not err by refusing to instruct the jury to disregard evidence that had not been stricken.