Steven WEAVER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 06S00–9012–CR–733.

Supreme Court of Indiana.

Dec. 20, 1991.

Allen F. Wharry, Martin & Wharry, Lebanon, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Steven Weaver was found guilty by a jury of murder, a felony. Ind.Code Section 35–42–1–1(1) (West Supp.1991). He was sentenced to fifty-five years in prison.

Weaver brings this direct appeal, raising four issues:

I. Whether the trial court erred in admitting statements Weaver made to the police;

II. Whether the trial court erred in admitting evidence of another of Weaver's crimes;

III. Whether the State sufficiently proved proper venue; and

IV. Whether the trial court erred in instructing the jury.

In November 1987, the body of David "Pigpen" Lakes, the victim in this case, was found in Boone County. Lakes was president of the Outlaws Motorcycle Club. He had been shot in the head at close range. The police were unsuccessful in locating his killer.

In the summer of 1989, appellant Weaver shot his wife six times. She informed the police that Weaver shot her and she also told them about Weaver's involvement in Lakes' death. After the police gleaned this information, Weaver, accompanied by counsel, surrendered to the Indianapolis police for the shooting of his wife. His counsel advised the police that Weaver would not be making a statement; counsel departed shortly thereafter.

After being informed that he also was to be arrested for the murder of Lakes, Weaver told the police he wanted to talk. He ultimately gave three incriminating statements describing in detail his murder of Lakes. Weaver also gave an interview to a television reporter while he was showing the police where he had disposed of Lakes' body. He told the reporter he killed Lakes and briefly described the murder.

Weaver believed Lakes had been stealing property and money which belonged to Weaver's brother "Wrongway." Weaver also discovered that Lakes planned to kill Wrongway, so he decided to kill Lakes first. Weaver and his sister-in-law, Christina Weaver, invited Lakes to her Indianapolis home ostensibly to remove money from a floor safe. When Lakes bent down to open the safe, Weaver shot him in the head with a .45. Weaver and Christina disposed of Lakes' body in Boone County and threw the gun into the White River.

*I. Admissibility of the Statements*

Weaver argues his three statements were improperly admitted at trial because they were obtained in violation of his fifth and sixth amendment rights. He contends the police questioned him about Lakes' murder after learning that he was represented by counsel and that he did not want to make a statement concerning the shooting of his wife. In the statements, Weaver described in consistent detail his murder of Lakes.

To protect the privilege against self-incrimination guaranteed by the fifth amendment, the U.S. Supreme Court has held that the police must terminate interrogation of an accused in custody if the accused requests the assistance of counsel. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After an accused has requested counsel, officials may not reinitiate questioning until counsel has

been made available to the accused. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). When an accused has invoked his fifth amendment right to counsel regarding an offense, police may not approach him concerning any other offenses unless counsel is present. *McNeil v. Wisconsin*, —— U.S. ——, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).

■ The *Edwards* rule ensures that a statement made in subsequent police interrogations is not the result of coercive pressure. *Minnick v. Mississippi*, —— U.S. ——, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). The rule thus applies to an accused who requests an attorney *"unless the accused himself initiates further communication, exchanges, or conversations with the police."* *Id.*, 111 S.Ct. at 489 (emphasis added). "Edwards does not foreclose finding a waiver of Fifth Amendment protections after counsel has been requested, provided the accused has initiated the conversation .or discussions with the authorities...." *Id.*, 111 S.Ct. at 492.

■ The sixth amendment right to counsel attaches " 'at or after the initiation of adversary judicial criminal proceedings.' " *McNeil*, 111 S.Ct. at 2207 (quoting *United States v. Gouveia*, 467 U.S. 180, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984)). Unlike the fifth amendment right, this right is offense specific; it is not invoked for all future prosecutions when invoked for one charge. *McNeil*, 111 S.Ct. 2204. A defendant can waive his sixth amendment protection by initiating the conversation or discussion with the authorities. *See Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) (*Edwards* rule applies in post-arraignment situations).

■ We turn first to appellant's fifth amendment claim. Weaver gave the first statement on the evening of August 17. He arrived at the police station with his attorney to surrender for shooting his wife. His attorney indicated that Weaver would not be making a statement, and then left the station. Weaver had thus invoked his fifth amendment right, and the police were barred from approaching Weaver regarding any offense.[1]

Weaver, however, initiated the statement and waived his fifth amendment protections. An officer went to get an arrest slip for Weaver. While she was gone, a second officer informed Weaver he also was going to be arrested for the murder of David Lakes. Weaver then stated to the officer that he wanted to talk. The officer obtained a request to make a statement and waiver of rights form. He read the rights form to Weaver, and Weaver signed it. In addition to informing Weaver of his rights, the form in part stated: "I hereby acknowledge that I at one time requested a lawyer, but now I wish to WAIVE that RIGHT. I further acknowledge that I have INITIATED this interview and that I have REQUESTED to make a statement." Record at 930.

Weaver never mentioned an attorney throughout the entire statement. There was no evidence of any threats or coercion against Weaver by the officers, and all Weaver's requests to the officers were granted. The officers testified that Weaver was calm, cooperative, and had no difficulty speaking to them. The statement was not taken in violation of Weaver's fifth amendment rights.

■ This analysis applies to Weaver's second statement as well. Later the same evening, while Captain Hudson was driving Weaver from Indianapolis to Boone County, Weaver began talking about the murder. Captain Hudson reminded Weaver of his rights and reminded him that he did not have to make a statement. Weaver indicated that he understood, and continued to

---

1. This analysis assumes Weaver's sixth amendment right had not yet attached for the crime for which Weaver was surrendering. It appears that adversary judicial criminal proceedings had not been initiated relative to this crime at the time Weaver entered the police station. The result would not change, however, if adversary judicial criminal proceedings were initiated prior to these statements. Weaver's invocation of his sixth amendment right to counsel for the charge of shooting his wife does not constitute a fifth amendment request for counsel on the Lakes' murder. *McNeil*, 111 S.Ct. at 2208–09.

speak. There was no error in the admission of this statement.

■ Weaver contends the third statement he gave to the police was erroneously admitted because it was taken in violation of his sixth amendment right to counsel. On August 18, 1989, Weaver appeared for his initial hearing on the murder of Lakes, and on August 21 he requested and received court appointed counsel. Weaver's sixth amendment right thus had attached prior to August 22, 1989, the date of the third statement. *See McNeil,* 111 S.Ct. 2204.

Weaver, however, initiated this videotaped statement. He indicated he wanted to make a statement, and he read and signed another advice of rights form. Weaver told the police he wanted to talk and that he did not care what his attorney told him. It is clear from the statement itself that Weaver was not coerced or threatened by the officers. When he declined to answer particular questions, the police did not pursue those further. Weaver stated that he was satisfied with his statement, and that he had no problems with the statement (although he acknowledged his attorney might). He stated he was advised of his right to an attorney prior to giving the statement, that his attorney told him not to talk, but that he still wanted to talk. He said: "[My attorney] told me not to [talk] and I said, I'll do what I want to do." Record at 1145. Weaver clearly initiated the statement and waived his sixth amendment right to have an attorney present at questioning. *See Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404. There was no error in the admission of this statement.

## II. Evidence of Another Crime

■ Weaver next argues the trial court erred in admitting over his objection evidence that in 1989 he shot his wife Lucinda six times. The State, citing *Valle v. State* (1990), Ind., 550 N.E.2d 746, argues this evidence was admissible to show that Weaver was attempting to conceal or suppress implicating evidence, as Lucinda knew that Weaver had killed Lakes in 1987.

In *Valle,* a defendant who was awaiting trial inquired of two people whether they were going to testify for the State. Shortly thereafter he shot them, killing one and injuring the other.

We agree with Weaver that the evidence of his shooting Lucinda was inadmissible. It is true that Lucinda knew of Weaver's involvement in Lakes' murder; she found out immediately after it occurred. There was nothing, however, to show Weaver's shooting of Lucinda in 1989 was an attempt to suppress the evidence she had pertaining to the murder. She had known about it and said nothing for two years. She went to the police with her story only after Weaver shot her. The evidence of this crime does not qualify for admission under *Valle.*

■ While admitting this evidence was error, it was plainly harmless. Weaver concedes there is no substantial likelihood that Lucinda's testimony about the shooting contributed to the verdict against him. The court allowed the State to ask Lucinda only two limited questions about the shooting. The remaining evidence introduced at trial was consistent and overwhelming to show Weaver's guilt in Lakes' murder. If anything, the evidence that Weaver shot Lucinda showed that Lucinda could have had a motive to lie about Weaver's involvement in Lakes' murder. The evidence demonstrated Lucinda's possible bias against her husband, and perhaps could have been helpful to Weaver's case. In any event, because we can say there is no substantial likelihood the improperly admitted evidence contributed to the jury's guilty verdict, the error in its admission was harmless. *See Jaske v. State* (1989), Ind., 539 N.E.2d 14.

## III. Venue

■ Weaver argues the State failed to prove venue properly. In Indiana, a defendant has a constitutional and statutory right to be tried in the county in which the crime was committed. *Campbell v. State* (1986), Ind., 500 N.E.2d 174; Ind. Const., Art. 1, § 13; Ind.Code § 35–32–2–1(a) (West 1986). The trial for a charge of killing another human being may be held in

one of three counties: the county where the cause of death was inflicted, where the death occurred, or where the victim's body was found. Ind.Code § 35–32–2–1(c) (West 1986). There was no question that the victim's body was found in Boone County, therefore the trial was properly held in Boone County. Weaver was not deprived of his constitutional and statutory right to be tried in the county in which the crime was committed.

Weaver's venue argument has a different twist, however. He argues that in light of the wording of the information, the State was bound to prove that the victim was *killed* in Boone County. Because the State did not and could not do so, Weaver maintains the State failed to prove venue.

The information read in part "that within said County of Boone, State of Indiana, on or about the 6th day of November, 1987, the said Stephen Weaver and Christina J. Weaver did then and there unlawfully knowingly or intentionally kill another human being, to-wit: David Lakes." Record at 19. It is uncontroverted that Weaver killed Lakes in Marion County, and disposed of the body in Boone County, where it was later discovered. Weaver brought this issue before the trial court prior to jury selection and again at the conclusion of the State's case. The prosecutor inexplicably declined to amend the information.

 A charging information must allege the place of the offense with sufficient particularity to show the offense was committed within the jurisdiction of the court where the charge is filed. Ind.Code § 35–34–1–2(a)(7) (West 1986). The information in this case facially established venue, albeit incorrectly, by alleging Lakes was killed in Boone County. At trial, the State clearly established that the body was found in Boone County, thus establishing venue in Boone County by virtue of the portion of the statute providing for venue in the county where the body is found. Ind.Code § 35–32–2–1(c).

The question for us then becomes whether the difference between the charging information and the proof at trial warrants reversing Weaver's conviction. Consisten-

cy between the allegations in the charging information and the proof at trial is required out of deference for the accused's constitutional right to be informed of the accusation in sufficient detail to enable him to prepare his defense, and to protect him against double jeopardy. *Manna v. State* (1982), Ind., 440 N.E.2d 473. A variance between the information and the proof at trial is thus fatal to the State's case only when the variance "misleads the defendant in the preparation of his defense or is of such a degree as to be likely to place a defendant in double jeopardy." *Grassmyer v. State* (1981), Ind., 429 N.E.2d 248, 256. *See also Payne v. State* (1970), 254 Ind. 100, 257 N.E.2d 818; *McCallister v. State* (1940), 217 Ind. 65, 26 N.E.2d 391.

There is absolutely no indication that Weaver was misled in the preparation of his defense by the erroneous language in the information. Weaver conceded that he may not have been misled, but argues that he could be subject to a subsequent prosecution in Marion County for the same crime. We are at a loss as to how Weaver could now be charged for the murder of Lakes in Marion County. He would be protected by the double jeopardy bar if new charges were brought in Boone or Marion County arising from this murder. The variance between the information and the proof at trial was not fatal, as it in no way harmed Weaver. "That being so, it would be a reproach to the law if he could obtain a reversal of a just conviction, on account of matter that in no way harmed or injured him." *McCallister*, 217 Ind. at 70, 26 N.E.2d at 393 (quoting *Kruger v. State* (1893), 135 Ind. 573, 578, 35 N.E. 1019, 1021).

### IV. Jury Instructions

 Weaver argues the trial court erred in giving the jury an instruction on the appropriate venue for a murder charge. The instruction tracked the language found in Ind.Code § 35–32–2–1(c).

The instruction of the jury lies within the sound discretion of the trial court, and we "will not reverse unless the error is such that, taken as a whole, the charge to the

jury misstates the law or otherwise misleads the jury." *Travis v. State* (1986), Ind., 488 N.E.2d 342, 345. The instruction at issue was a correct statement of the law. Weaver argues it was misleading, however, because the jury was also read the information which alleged the victim was killed in Boone County. We do not find this minor discrepancy to be misleading to the jury.

A jury must be instructed on matters that are necessary for its consideration in arriving at a verdict. *Storey v. State* (1990), Ind., 552 N.E.2d 477. Although venue is not an element of a crime, the State must prove venue by a preponderance of the evidence. *Sizemore v. State* (1979), 272 Ind. 26, 395 N.E.2d 783; *Campbell*, 500 N.E.2d 174. When venue is an issue, as it was in this case, it is not error to instruct the jury on the law applicable to venue. *See Pollard v. State* (1979), 270 Ind. 599, 388 N.E.2d 496 (approving similar instruction regarding jurisdiction; instruction was necessary to jury's understanding of the charge and the issue of jurisdiction). The trial court did not err in giving this instruction to the jury.

■ Weaver also contends the trial court erred in refusing to give his tendered instructions on the lesser included offense of voluntary manslaughter and the definition of sudden heat.

We use a two-step inquiry to determine whether an instruction on a lesser included offense should have been given. *Lynch v. State* (1991), Ind., 571 N.E.2d 537. We first determine whether the lesser offense is inherently or factually included in the greater offense by looking at the statutes and the charging instrument. *Id.* Voluntary manslaughter is a lesser included offense of murder, as all the elements of voluntary manslaughter are included in the statutory definition of murder. *Russell v. State* (1981), 275 Ind. 679, 419 N.E.2d 973 (voluntary manslaughter is a lesser included offense of murder).

The second part of the test is to determine whether a serious evidentiary dispute exists with respect to the element which distinguishes the greater and lesser offenses. *Lynch*, 571 N.E.2d 537. The distinguishing factor between murder and voluntary manslaughter is the presence of sudden heat. *Reinbold v. State* (1990), Ind., 555 N.E.2d 463. "For sudden heat to reduce murder to manslaughter, there must be sufficient provocation to arouse the emotions of an ordinary person so as to obscure his reasoning powers." *Smedley v. State* (1990), Ind., 561 N.E.2d 776, 781.

There was simply no evidence to support Weaver's claim of sudden heat. The record is replete with references to Weaver's plan to kill Lakes. He had been angry with Lakes about problems within the Outlaws Motorcycle Club, and decided to kill him when he overheard Lakes talking about killing Weaver's brother in California. The day after Weaver overheard this conversation, he invited Lakes over to get some money out of a safe. When Lakes bent over and reached into the safe, Weaver shot him in the head at very close range. Weaver then took great pains to clean up the area in which Lakes was killed, and to dispose of the body, gun and bullets in separate locations. There was no serious evidentiary dispute with respect to sudden heat, the element which distinguishes the two offenses. The trial court properly refused Weaver's tendered instructions.

The judgment of the trial court is affirmed.

DeBRULER, GIVAN, DICKSON and KRAHULIK, JJ., concur.