**Robert CORRELL, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 67A04–9310–PC–386.

Court of Appeals of Indiana, Fourth District.

Sept. 8, 1994.

Order Denying Rehearing Nov. 3, 1994.

Susan K. Carpenter, Public Defender, Anne–Marie Alward, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Dana A. Childress–Jones, Deputy Atty. Gen., Indianapolis, for appellee.

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

In 1984, Robert Correll was convicted of criminal confinement as a class B felony; burglary as a class B felony; burglary as a class C felony; and two counts of theft, class D felonies.[1] His convictions were affirmed by the supreme court on direct appeal. *Correll v. State* (1985), Ind., 486 N.E.2d 497. He now appeals from the denial of his petition for post-conviction relief. We remand with instructions to reduce the confinement conviction to a class D felony, and we affirm in all other respects.

### ISSUES

Correll raises the following issues for review.

I.  Did fundamental error occur, and was Correll thereby deprived of due process, when Correll was convicted of criminal confinement—an element of which is its being committed while armed with a deadly weapon—and the information charged him with kidnapping and made no reference to a deadly weapon?

II.  Was Correll denied his constitutional right to testify in his own behalf?

III.  Was Correll denied his constitutional right to effective assistance of counsel at trial and on his appeal?

IV.  Did the post-conviction court err in relying upon the doctrine of "invited error" to deny Correll's petition for post-conviction relief?

---

1.  In a separate cause, Correll was also charged with and convicted of escape as a class D felony.

## FACTS

As previously described by the supreme court, the following events gave rise to Correll's charges and convictions.

"[Correll] escaped from the Indiana State Farm on January 26, 1983. Police officers discovered [Correll's] prison clothes in the basement of a house belonging to Donald Blue located one and one quarter (1¼) miles from the State Farm. Blue's house was broken into and clothes, food, and a shotgun were taken. A chair was found overlooking the house trailer of Mary Jo Kellam, located across the street from Blue's house. Kellam arrived home from work at about 1:00 a.m. that night. Shortly thereafter [Correll], armed with the stolen shotgun, broke into Kellam's trailer and demanded beer and a ride to Indianapolis. At Indianapolis, while the temperature was below freezing, [Correll] forced Kellam into the trunk of the car, from which she eventually escaped."

*Id.* at 499.

After his direct appeal, Correll filed a verified *pro se* petition for post-conviction relief in 1989. A State Public Defender filed an entry of appearance later in 1989. In September, 1992, Correll's current State Public Defender filed her appearance for Correll, and on March 25, 1993, Correll's motion to amend his petition for post-conviction relief was filed. The amended petition raised the first three issues specified above. Correll's petition was heard on June 29, 1993. Both Correll and his original trial counsel testified. The court denied Correll's petition, finding "that in balancing the caselaw against the doctrine of invited error presented in this case, and the other issues, that the doctrine of invited error must prevail and therefore denie[d]" Correll's petition.

## DISCUSSION AND DECISION

■ A claim of fundamental error can be raised in a petition for post-conviction relief regardless of whether the issue normally would have been waived on direct appeal. *Haggenjos v. State* (1986), Ind., 493 N.E.2d 448. Fundamental error is "blatant" error which, if not rectified, would "deny the petitioner 'fundamental due process.'" *Id.* at

450. In this case, Correll failed to preserve for review on direct appeal the errors here asserted. Therefore, unless these errors are of fundamental magnitude, they are deemed waived.

At the outset, we note that Ind.Post–Conviction Rule 1 § 6 requires the trial court "make specific findings of fact, and conclusions of law on all issues presented." The court's decision refers only to "the doctrine of invited error" in denying Correll's petition. That doctrine does not address his assertions of being denied his right to testify and his right to the effective assistance of counsel. However, we do not find that a remand for more specific findings is warranted as "the facts underlying appellant's claims are not disputed and the issues are sufficiently presented for appeal." *State v. Grigsby* (1987), Ind., 503 N.E.2d 394, 397.

### I. Confinement Conviction

The information filed against Correll charged him with kidnapping, a class A felony pursuant to I.C. 35–42–3–2, for "having knowingly and intentionally remove[d] by force from one place to another with intent to aid in" his own escape and having "force[d] one Mary Jo Kellum to remove herself from her place of residence into her own automobile, and to take" Correll to Indianapolis "to aid in his escape from the Indiana State Farm." R. at 19. Accordingly, the trial court provided the jury with an instruction which defined the crime of class A felony kidnapping and which stated that

"to convict the defendant ... the State must have proved each of the following elements: the defendant

1. knowingly or intentionally

2. removed another person, by fraud, enticement, force or threat of force, from one place to another with intent to obtain the release, or intent to aid in the escape of any person from lawful detention."

R. at 91.

Correll tendered an instruction regarding the "crime of criminal confinement" whereby one "knowingly or intentionally:

1. confines another person without his consent;

2. removes another person, by fraud, enticement, force, or threat of force, from one place to another."

R. at 92. The tendered instruction said that if the State proved the defendant "committed these acts" of confinement "while armed with a deadly weapon, you should find him guilty of criminal confinement, a class B felony." Id.[2] The court gave the jury an instruction on the crime of confinement, using Correll's language.

Correll contends that as the kidnapping charge did not mention a "deadly weapon," Correll was convicted of a crime which includes an element not contained in the charging information, and such is fundamental error according to Yarbrough v. State (1986), Ind., 497 N.E.2d 206. The State argues that Correll "invited" the error by tendering his instruction with the "language he now complains of," specifically, the "while armed with a deadly weapon" language. The State refers to a series of cases standing for the proposition that "error invited by the complaining party is not reversible error." Appellee's brief at 8.

Yarbrough was originally charged with one count of battery as a class C felony, alleging that he struck a child "in the face" with resulting "serious bodily injury" and another count of battery as a class D felony, alleging that his striking the child resulted in "bodily injury" to a person under thirteen years of age. Yarbrough, supra at 207. Yarbrough moved to dismiss the first count (battery causing serious bodily injury), and the motion was granted. Thus, Yarbrough was tried on a single charge by information of "battery, class D felony" with the allegation "that his act resulted in bodily injury." Id. As in the case at bar, Yarbrough submitted a jury instruction which described another crime. Yarbrough's tendered instruction defined the "crime of Recklessness" and specified the different classes of recklessness. The instruction included the statement that "A person who recklessly, knowingly or intentionally inflicts *serious bodily injury* on another

person commits criminal recklessness, a class D felony." Id. at 208 (emphasis added). The instruction tendered by Yarbrough was modified by the court (a reference to class A misdemeanor recklessness, which includes the use of a vehicle or deadly weapon, was stricken), but the instruction as given to the jury included Yarbrough's language defining class D felony recklessness as that inflicting serious bodily injury. As in the case at bar, the State argued that "Appellant invited this error by submitting the instruction authorizing the jury to find the defendant guilty of criminal recklessness." Id. at 208–209. To which Yarbrough responded that as this was fundamental error, it "transcends Appellant's act of inviting error." Id. Our supreme court declared that "we need not discuss" such meritorious contentions, because "Indiana courts consistently have found it to be fundamental error to convict a defendant for an offense which includes an element not included in the charge." Id.

■ We find no basis on which this case may be distinguished from Yarbrough. In order to convict Correll of class B felony confinement, the state was required to allege that Correll was armed with a deadly weapon. The state's failure to so do so constitutes fundamental error. We therefore remand this cause to the trial court with instructions to enter a judgment modifying Correll's conviction, to show Correll guilty of the offense of confinement as a class D felony.

## II.  Right to Testify

The right to testify on one's own behalf in a criminal proceeding has been described by the U.S. Supreme Court as "a right implicit in the Constitution." *U.S. v. Dunnigan* (1993), —— U.S. ——, ——, 113 S.Ct. 1111, 1117, 122 L.Ed.2d 445.

Correll was provided appointed counsel. A hand written letter from Correll to the judge, dated April 16, 1984 and file-marked April 17th (the day on which Correll's trial began), expressed Correll's dissatisfaction

---

2. The tendered instruction would also have allowed the jury to convict Correll of "criminal confinement, a class D felony," a crime not entailing the presence of a deadly weapon. The

judge crossed through this language. Thus, the instruction provided the jury a single additional option to conviction for kidnapping: conviction for criminal confinement as a class B felony.

with the counsel for several reasons including that "he dosen't [sic] want me to testifi [sic] in my owne [sic] behalf." R. at 69. An accompanying document listed the eight chapters of Article 36 "Pretrial Notices, Motions and Procedures" of Title 35. Outside the presence of the jury and at the very beginning of the trial, the trial court judge heard Correll's testimony about his appointed counsel, that "he doesn't want me to testify in my own behalf." R. at 200. The court then denied Correll's purported motions. Correll argues that there is "no evidence on the record that he ever voluntarily waived his right to testify," and that under these circumstances "the trial court had a duty to insure that Correll personally made a knowing and intelligent waiver of his constitutional right to testify." Appellant's brief at 14–15.

Correll cites *Winkelman v. State* (1986), Ind.App., 498 N.E.2d 99 for the right of an accused under the Indiana Constitution "to be heard by himself and counsel" and the duty of the judge "to insure that Correll personally make a knowing and intelligent waiver of his constitutional right to testify ... and to make a record of such waiver." Appellant's brief at 14–15. Mr. and Mrs. Winkelman represented themselves at trial on charges of neglect (following the death of their three week old son from pneumonia) for refusing to provide conventional medical care and instead relying on prayer and religious beliefs. In a colloquy between the Winkelmans and the judge, at the point where they were to present their defense, the judge told them that they would have the opportunity to make a statement to the jury during final argument. Consequently, neither testified. Under these circumstances, the Winkelmans were found to not have "knowingly and intelligently waive[d] their right to be heard as the trial judge did not explain to them that they could testify as witnesses in their own behalf." *Id.* at 101. The "duty" which we

ascribed to the trial judge was "to clearly explain to the Winkelmans that they could offer testimony, including their own, at the end of the state's case" and to "make a record of the explanation." *Id.* That the Winkelmans were acting *pro se* at trial must be considered to distinguish their case from Correll's. Further, the *Winkelman* facts demonstrate the active involvement of the court in the Winkelman's failure to testify.[3]

The State directs our attention to *Underwood v. Clark*, 939 F.2d 473 (7th Cir.1991). *Underwood* considered a claim that counsel "was 1) ineffective in counseling him not to testify, and 2) actually forbade him to testify." *Id.* at 474. Judge Posner wrote that "the lawyer's advice was sound" and also "wasn't likely to change the outcome of the trial—in legalese, it was not 'prejudicial.'" *Id.* at 475. The "more substantial issue" related to Underwood's not testifying was "whether his lawyer did not merely counsel Underwood not to do so but forbade him." *Id.* The court looked at the "grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right that is not waivable by counsel) to testify in his own behalf without rendering the criminal process unworkable." *Id.* Because "it is extremely common for criminal defendants not to testify, and there are good reasons for this," the mere assertion after being convicted that "my lawyer wouldn't let me testify" is "insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him." *Id.* at 476. Rather, "some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify." *Id.*

More recently, the Seventh Circuit has rejected the claim that the trial court "was required, under the Due Process clause in the Constitution, to inquire specifically whether [a defendant] was knowingly and

---

**3.** In his reply brief, Correll cites our supreme court stating the Indiana Constitution's "language places a unique value upon the desire of an individual accused of a crime to speak out personally in the courtroom and state what in his mind constitutes a predicate for his innocence of the charges." *Campbell v. State* (1993), Ind., 622 N.E.2d 495, 498. Thus, Correll argues, he was "like Campbell ... precluded from speaking out personally in the courtroom." Reply brief at 3. Campbell's testimony was excluded by the trial court because he had failed to comply with the alibi notice statute. Here, the trial court did not rule that Correll could not testify. Thus, he was not precluded "like Campbell."

intelligently waiving his right to testify at trial." *U.S. v. Curry*, 977 F.2d 1042, 1058 (7th Cir., 1992), cert. denied sub nom. *Holland v. U.S.*, —— U.S. ——, 113 S.Ct. 1357, 122 L.Ed.2d 737 (1993). "We have rejected this identical claim on numerous occasions." *Id.*

Correll's trial counsel testified at the post-conviction relief petition hearing. He said Correll "wanted to take the stand and I, obviously I told him not to." P.C.R.R. at 113. Counsel said he had "decided on balance, it was better that if, that he not testify." P.C.R.R. at 117.

Correll testified at the post-conviction relief petition hearing that he understood the judge's ruling on his hand written document about motions to mean that he could not take the stand. P.C.R.R. at 102.

■ Correll did not testify that his counsel forbade him to testify. There is no evidence of such action by trial counsel. Rather, we have Correll's perception that he would not be allowed to testify. Such a perception on the part of a defendant does not rise to the level of substantiation required to establish the denial of one's right to testify in one's own behalf.

### III. Ineffective Assistance of Counsel

Correll contends he was denied effective assistance of counsel both at trial and on direct appeal. Specifically, he argues that appellate counsel's failure to raise the substantive issues discussed in sections I. and II. constitutes ineffective assistance of counsel. He argues that trial counsel's tender of an instruction which was "improper since it listed criminal confinement with a deadly weapon as a lesser included offense, which it was not," his failure to object to the incorrectness of the instruction as given, and his "failure to yield control of this fundamentally personal decision [about testifying] to his client," constitute ineffective assistance. Appellant's brief at 17–18.

Upon a showing that "counsel's performance fell below an objective standard of reasonableness and that said deficient performance so prejudiced defendant as to deprive him of a fair trial," reversal for ineffective assistance of counsel is appropriate. *Bellmore v. State* (1992), Ind., 602 N.E.2d 111, 123, citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

"A claim of ineffective assistance must identify the claimed errors of counsel so that the court may determine whether, in light of all circumstances, counsel's actions were outside the range of professionally competent assistance. The proper measure of attorney performance is reasonableness under prevailing professional norms. It shall be strongly presumed that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight. Isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffectiveness of counsel. If deficient performance of counsel can be proven, defendant must further show a reasonable probability that it altered the outcome of the case."

*Id.*

■ As to the claim regarding the confinement instruction, Correll's attorneys should have been aware of the discrepancy in the specified elements as compared to the factual allegations in the information. However, because the "proper remedy in this situation is to remand" for entry of judgment of conviction of class D confinement, Correll has "failed to demonstrate that any ignorance on the part of his attorneys would require a complete reversal." *Heyward v. State* (1988), Ind.App., 524 N.E.2d 15, 20. *See also Holland v. State* (1993), Ind.App., 609 N.E.2d 429.

As to the claimed error of denial of Correll's right to testify, we have already determined that Correll has failed to demonstrate that his trial counsel forbade his testifying. Absent such forbidding by counsel, neither the trial counsel's action nor failure of appellate counsel to raise the issue leads to the conclusion that specific harm to Correll resulted from his not testifying.

*IV. Invited Error Doctrine*

Lastly, Correll claims the post-conviction court erred in relying on the invited error doctrine in denying him relief. As our supreme court said in *Yarbrough,* "we need not discuss" that contention as fundamental error lies in Correll's having been convicted for an offense which includes an element not included in the charging information. *Yarbrough, supra* at 209.

Affirmed and remanded with instructions.

RILEY and BAKER, JJ., concur.

*ON PETITION FOR REHEARING*

In its petition for rehearing, the State refers us to *Craig v. State* (1985), Ind., 484 N.E.2d 566. We are not unaware of the *Craig* decision. However, *Yarborough v. State* (1986), Ind., 497 N.E.2d 206, which we followed in our decision finding Correll's conviction for a crime containing an element not present in the charging information could not stand, is the more recent pronouncement by our supreme court. We believe we are bound by the latest pronouncement of our supreme court and follow *Yarborough.*

Rehearing is denied.

RILEY and BAKER, JJ., concur.