David Paul CLARK, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 71A03–0411–CR–520.

Court of Appeals of Indiana.

Sept. 14, 2005.

Charles W. Lahey, South Bend, IN, for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, for Appellee.

## OPINION

SHARPNACK, Judge.

David Clark appeals his conviction for murder.[1] Clark raises three issues, one of which we find dispositive and restate as whether the trial court erred by refusing to instruct the jury on the lesser included offense of voluntary manslaughter.[2] We reverse and remand.

The relevant facts follow. On November 17, 2003, Jeffrey Funches ("Jeffrey") left work at 3:00 p.m. and walked to the corner of Broadway Street and Michigan Street in South Bend, where he met his brother, Gregory Funches ("Gregory"), and Gregory's friend, Emmanuel Jackson. The three men walked to Southside Liquor and bought some vodka. The men then drank the vodka under the shade of a tree. After Jackson left, Gregory went into Joe's Liquor Store and bought some wine. Gregory and Jeffrey then stood outside of the liquor store for awhile.

As the two brothers were standing in front of the store, Clark arrived and went into Joe's Liquor Store, where he bought a six-pack of beer. Clark stepped outside, went back into Joe's Liquor Store, and asked the clerk to call the police. Clark and either Gregory or Jeffrey exchanged words, in which Clark used the word "nigger" and either Gregory or Jeffrey used the phrase "Mother fucker." Transcript at 50. Clark walked away and said, "You guys better not follow me. You guys better not follow me." *Id.* at 51. Clark then began walking down Main Street. After Clark left, Gregory and Jeffrey walked down an alley, finished the wine, and walked to the intersection of Sample Street and Main Street.

Clark hid between some bushes and a building at the northeast corner of Sample Street and Main Street. When Clark came out from behind the bushes, he walked confidently toward Gregory and Jeffrey. Gregory grabbed Clark's plastic bag that contained his beer, and a struggle

---

1. Ind.Code § 35–42–1–1 (Supp.2003).

2. Because we hold that the trial court erred in failing to give the instruction on voluntary manslaughter, *see infra,* we do not reach the merits of issues relating to whether the prosecutor engaged in misconduct or whether Clark was denied the effective assistance of counsel.

ensued. Clark yelled, "I told you to leave my bag alone," and "I told you this is my bag." *Id.* at 98–99. Lori Flanagan was driving on Sample Street, and as she approached the intersection, she heard "loud voices." *Id.* at 60, 85–86. Theresa De-Wald was also driving on Sample Street, and she heard Clark yelling. Clark then stabbed Gregory twice in the chest with a knife. The whole incident "happened very quickly." *Id.* at 72. Clark then said, "help" a couple of times and walked to the South Bend Center for the Homeless. *Id.* at 65. Clark entered the Center for the Homeless, placed the knife on a counter, and said, "I just stabbed somebody that was going to rob me." *Id.* at 170. The South Bend Fire Department transported Gregory to the hospital where he was pronounced dead.

The State charged Clark with murder. At trial, Clark tendered an instruction on the lesser included offense of voluntary manslaughter, which the trial court refused. Clark objected, and the following exchange took place:

THE COURT: Okay. Well, we're waiting for the defendant.

Oh, we could make a record on who objected to what and why.

The big one is [Clark's attorney] objected because I said I was not going to give any of his instructions that have lesser includeds of voluntary manslaughter and sudden heat which is a part of that. And [Clark's attorney] objected when I wouldn't give reckless homicide.

And you felt that under the law they are inherently included lesser includeds of murder, and the evidence justified giving them.

[CLARK'S ATTORNEY]: Yes.

THE COURT: As at least alternative theories.

[CLARK'S ATTORNEY]: Yes.

THE COURT: Anything else you want to say as to that?

[CLARK'S ATTORNEY]: No.

THE COURT: My ruling was that the evidence—that while I agree they are lesser includeds, there's a distinguishing element from each of them from murder. And on the voluntary manslaughter I suggested that sudden heat requires a sudden emotion usually by the way caused by the victim, by some action of the victim which gives rise to a sudden surge of anger, resentment. There were some other emotions that are in all the case law. And I said those emotions are ones that focus on the other person, an attitude of emotion of anger, hatred, resentment, et cetera, against the other person, that sudden heat therefore acts to diminish the culpability or the penalty from murder but it does not act as a complete defense. It is not a defense.

Whereas self defense where you have somebody acting out of fear, if the jury were to find that and found that it was reasonable under all the circumstances and that he actually did have that fear and a reasonable person would have that fear so as to act as the way he acted, that would be a complete defense. It's not a reduction of culpability. It's a complete defense.

And I thought the only evidence here came to the question of fear. And that is accounted for in the self defense which I am giving, and I didn't think it justified the voluntary manslaughter because it wasn't anger or resentment or whatever.

Transcript at 305–307. The trial court instructed the jury on murder and self-defense. The jury found Clark guilty as charged. The trial court sentenced Clark to fifty years in the Indiana Department of Correction.

■ The dispositive issue is whether the trial court erred by refusing to instruct the jury on the lesser included offense of voluntary manslaughter. Clark tendered the following instruction on voluntary manslaughter:

### DEFENDANT'S TENDERED INSTRUCTION NO. 2

The crime of Murder is defined by law as follows:

A person who knowingly or intentionally kills another human being commits murder, a felony.

Included in the charge in this case is the crime of voluntary manslaughter, which is defined by statute as follows:

A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a Class B felony. The offense is a Class A felony if it is committed by means of a deadly weapon.

Sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter. The State has the burden of proving beyond a reasonable doubt that the Defendant was not acting under sudden heat.

Before you may convict the Defendant, [t]he State must have proved each of the following beyond a reasonable doubt:

1. The Defendant
2. Knowingly or intentionally
3. Killed
4. Gregory Funches
5. And the Defendant was not acting under sudden heat
6. And the Defendant killed by means of a deadly weapon.

If the State failed to prove each of elements 1 through 4 and 6 beyond a reasonable doubt, you must find the Defendant not guilty of murder.

If the State did prove each of the elements 1 through 4 and 6 beyond a reasonable doubt, but the State failed to prove beyond a reasonable doubt element 5, you may find the Defendant guilty of voluntary manslaughter, a Class A felony, a lesser included offense of murder.

If the State did prove each of elements 1 through 6 beyond a reasonable doubt, you may find the Defendant guilty of murder.

Appellant's Appendix at 39.

■ To determine whether instructions on lesser included offenses should be given, the trial court must engage in a three-step analysis. *Wright v. State*, 658 N.E.2d 563, 566 (Ind.1995). This analysis contains three steps: (1) a determination of whether the lesser included offense is inherently included in the crime charged; if not, (2) a determination of whether the lesser included offense is factually included in the crime charged; and, if either, (3) a determination of whether a serious evidentiary dispute existed whereby the jury could conclude the lesser offense was committed but not the greater. *Id.* at 566–567.

In *Brown v. State*, 703 N.E.2d 1010, 1019 (Ind.1998), the Indiana Supreme Court set forth our standard of review as follows:

For convenience we will term a finding as to the existence or absence of a substantial evidentiary dispute, a *Wright* finding. Where such a finding is made we review the trial court's rejection of a tendered instruction for an abuse of discretion. *Champlain v. State*, 681 N.E.2d 696, 700 (Ind.1997). This finding need be no more than a statement on the record that reflects that the trial court has considered the evidence and determined that no serious evidentiary

dispute exists. *See McEwen v. State,* 695 N.E.2d 79 (Ind.1998). Its purpose is to establish that the lack of a serious evidentiary dispute and not some other reason is the basis of the trial court's rejection of the tendered instruction. However, if the trial court rejects the tendered instruction on the basis of its view of the law, as opposed to its finding that there is no serious evidentiary dispute, appellate review of the ruling is de novo. *Champlain,* 681 N.E.2d at 700.

During the trial, the trial court stated, "I thought the only evidence here came to the question of fear. And that is accounted for in the self defense which I am giving, and I didn't think it justified the voluntary manslaughter because it wasn't anger or resentment or whatever." Transcript at 307. The trial court appears to have rejected the tendered instruction on voluntary manslaughter on its view of the law that sudden heat cannot be based on fear and the instruction on self-defense accounts for evidence regarding fear. Accordingly, appellate review of the ruling is de novo.

■ We first will address the trial court's view that an instruction on self-defense precludes an instruction on voluntary manslaughter. The decision of *Pinegar v. State,* 553 N.E.2d 525 (Ind.Ct.App. 1990), *trans. denied,* does not support the trial court's view. In *Pinegar,* the defendant and the victim were talking outside a bar, began scuffling, and the defendant stabbed the victim several times in the chest. *Id.* at 526. The State relied on *Ward v. State,* 519 N.E.2d 561 (Ind.1988), and argued that by claiming self-defense, the defendant took a position inconsistent with a claim of voluntary manslaughter. *Id.* at 528. We held:

> In *Ward* the court held that any error in refusing a voluntary manslaughter instruction had been waived for the failure

to tender signed and numbered instructions. The court also noted that the defendant's "version of the facts presents a question of self-defense not sudden heat ...." [Ward,] 519 N.E.2d [at] 563. We do not take that statement as intended to preclude, as inherently inconsistent, claims of self defense and killing in a sudden heat.

As the court earlier explained in *Palmer v. State* [, 425 N.E.2d 640, 644 (Ind.1981) ]:

> The voluntary manslaughter statute creates an affirmative defense of sudden heat akin to self-defense. The latter is, if successful, a complete defense while the defense of sudden heat is only a partial defense because it reduces the seriousness of the crime .... It is akin to self-defense in that its introduction into the case (either through the State's own evidence or through the defendant's evidence or both) places a burden upon the State to negate the defense beyond a reasonable doubt and calls for an instruction on the lesser included offense of voluntary manslaughter.

Clearly, the court in *Palmer* did not consider that a claim of self defense was necessarily inconsistent with finding killing in a sudden heat. Rather, sudden heat is in the nature of a partial defense that should be presented to the jury when supported by the evidence and requested by the state or the defendant. That view certainly appears analytically correct in instances such as those where an accused is actually provoked and in the sudden heat of passion exceeds the permissible bounds of self defense and kills someone. The jury should be allowed to determine the elements of self defense and whether there was adequate provocation and, in fact, killing in a sudden heat.

*Id.* Accordingly, an instruction on self-defense does not preclude an instruction on voluntary manslaughter. *See, e.g., id.*

 The first step under *Wright* is to determine whether the lesser included offense is inherently included in the crime charged. *Wright,* 658 N.E.2d at 566–567. The only element distinguishing murder from voluntary manslaughter is "sudden heat," which is an evidentiary predicate that allows mitigation of a murder charge to voluntary manslaughter. *Dearman v. State,* 743 N.E.2d 757, 760 (Ind.2001). Voluntary manslaughter is an inherently included lesser offense of murder. *Wilson v. State,* 697 N.E.2d 466, 474 (Ind.1998), *reh'g denied.*

 Because voluntary manslaughter is inherently included in a murder charge, we turn to the final step of the *Wright* analysis to determine whether Clark's instruction should have been granted. *Horan v. State,* 682 N.E.2d 502, 507 (Ind.1997), *reh'g denied.* "A trial court should grant the requested voluntary manslaughter instruction if the evidence demonstrates a serious evidentiary dispute regarding the mitigating factor of sudden heat." *Powers v. State,* 696 N.E.2d 865, 868 (Ind.1998). Sudden heat is characterized as "anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation, excluding malice, and rendering a person incapable of cool reflection." *Dearman,* 743 N.E.2d at 760. To establish that a defendant acted in sudden heat, the defendant must show "sufficient provocation to engender ... passion." *Johnson v. State,* 518 N.E.2d 1073, 1077 (Ind.1988).

 An instruction on voluntary manslaughter is supported if there exists evidence of sufficient provocation to induce passion that renders a reasonable person incapable of cool reflection. *Roark v. State,* 573 N.E.2d 881, 882 (Ind.1991).

Any appreciable evidence of sudden heat justifies an instruction on voluntary manslaughter. *Id.* The Indiana Supreme Court has held:

> We acknowledge that the determination of whether there is "any appreciable evidence of sudden heat" is often difficult to make. Thus, when the question to instruct on a lesser included offense is a close one, it is it is prudent for the trial court to give the instruction and avoid the risk of the expense and delay involved in a retrial.

*Griffin v. State,* 644 N.E.2d 561, 563 (Ind. 1994).

We find appreciable evidence in this record, which, if believed by the jury, could have established sudden heat. Clark testified that he was scared, was hiding from Gregory and Jeffrey, and "thought [Gregory and Jeffrey] were going to beat [him] up or whatever they were going to do to [him]." Transcript at 243–244. During the trial, the following exchange occurred:

> A I told him to stop—no, I told him don't. And he kept coming at me and reaching in his pocket. I thought he was going to pull a gun out and shoot me. I had all these thoughts going through my head. I didn't know what to think.
>
> Q Were you afraid?
>
> A Yes, I was.
>
> Q Afraid of what?
>
> A Thought he was going to kill me or maybe pull out a knife and slash me or what he was going to do I didn't know.

Transcript at 245–247. Further, the trial court stated, "I thought the only evidence here came to the question of fear." Transcript at 307. The trial court's statement indicates that the trial court believed an evidentiary dispute existed regarding fear.

Sudden heat is inter alia characterized as "... *terror* sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation, excluding malice, and rendering a person incapable of cool reflection." *Dearman*, 743 N.E.2d at 760 (emphasis added). "Terror" is defined as "Alarm; fright; dread; the state of mind induced by the apprehension of hurt from some hostile or threatening event or manifestation; fear caused by the appearance of danger." BLACK'S LAW DICTIONARY 1473 (6th ed.1990). Terror is also defined as "[i]ntense, overpowering fear." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1329 (1981). Thus, the trial court's statement that "the only evidence here came to the question of fear" addresses a question of terror, a characteristic of sudden heat. Transcript at 307. Accordingly, the trial court should have given an instruction on voluntary manslaughter. *See, e.g., Roark*, 573 N.E.2d at 883 (holding that evidence was sufficient to warrant an instruction on voluntary manslaughter).

For the foregoing reasons, we reverse Clark's convictions and remand for a new trial.

Reversed and remanded.

VAIDIK, J. and MAY, J. concur.