William Wesley ROSS, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 48A04–0611–PC–675.

Court of Appeals of Indiana.

Dec. 11, 2007.

William Wesley Ross, Carlisle, IN, Appellant pro se.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

William Wesley Ross appeals the denial of his petition for post-conviction relief ("PCR petition"), which challenged his conviction for Class A felony voluntary manslaughter. We affirm.

### Issue

Ross raises a number of issues in this appeal, most of which are either waived or not appropriate PCR arguments. The only issue we address in detail is whether Ross received ineffective assistance of trial counsel.

### Facts

We previously described the facts of this case as follows:

> Ross was a friend of Eddie White and Gordon Armour. The three men had an ongoing disagreement with another group of friends, which included Charlie Jordan, Tony McClendon, and Kenneth Buckley. The disagreement between the groups had, on a couple of occasions, resulted in fights at nightclubs. On one such occasion, Jordan and Buckley beat up White.
>
> On March 23, 2001, Jordan, McClendon, Buckley, and others were at a cookout at the corner of 22nd Street and Arrow Avenue in Anderson, Indiana. At some point during the cookout, Ross, White, and Armour drove by the cookout and decided to stop. The three men

exited their car, and White and Ross approached Jordan. An argument erupted between the two groups. Jordan and Ross began firing handguns at one another. Jordan attempted to run away, but Ross ran after him and continued shooting.

A shot fired by Jordan hit Ross in the chest. Ross drove himself to the hospital in White's car. Ross and Armour agreed to tell the police that Armour had flagged down a passerby to take them to the hospital. The police questioned Ross in the emergency room, and he claimed that he was the victim of a drive-by shooting. The next day, police again questioned Ross and he gave an audio-taped statement in which he denied being in a car at 22nd and Arrow, having a gun, or shooting anyone.

Jordan died from bullet wounds to the chest and the abdomen. An autopsy revealed that Jordan was shot from behind. Ballistics tests revealed that Jordan was shot with a gun that had Ross's fingerprints on it.

The State charged Ross with murder, a felony, carrying a handgun without a license, a Class A misdemeanor, and carrying a handgun without a license, a Class C felony. A jury found Ross guilty of voluntary manslaughter and carrying a handgun without a license, a Class A misdemeanor. At the sentencing hearing, Ross pled guilty to having a prior felony conviction, which enhanced his conviction of carrying a handgun without a license to a Class C felony. The trial court sentenced Ross to fifty years imprisonment for the voluntary manslaughter conviction and to eight years imprisonment for the handgun conviction, with the two terms to be served concurrently.

*Ross v. State,* No. 48A02-0201-CR-73, slip. op. pp. 2-3, 783 N.E.2d 806 (Ind.Ct.App., Jan. 29, 2003), *trans. denied.*

On direct appeal, Ross challenged only his voluntary manslaughter conviction. Appellate counsel asserted there was insufficient evidence to support the conviction. Also, counsel claimed that the taped statement to police Ross gave at the hospital should not have been admitted because he was under the influence of heavy medication at the time, rendering the statement involuntary. We rejected both claims and affirmed. On April 3, 2003, our supreme court denied Ross's petition to transfer.

On October 24, 2003, Ross filed a PCR petition, which subsequently was amended twice. The State Public Defender declined to represent Ross in this matter, and he proceeded (and continues to proceed) pro se. On October 19, 2006, the post-conviction court denied Ross's petition. He now appeals.

### Analysis

A PCR petitioner must establish grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *Ivy v. State,* 861 N.E.2d 1242, 1244 (Ind.Ct.App.2007), *trans. denied.* When a post-conviction court denies relief, the petitioner appeals from a negative judgment and must demonstrate on appeal that the evidence unerringly and unmistakably leads to a conclusion opposite that reached by the court. *Ivy,* 861 N.E.2d at 1244. We may reverse the post-conviction court's decision only if the evidence is without conflict and leads to the conclusion opposite that reached by the court. *Id.*

Post-conviction proceedings are not intended to be a "super-appeal"; rather, they provide a narrow remedy for collateral challenges to convictions that must be based on grounds enumerated in the post-conviction rules. *Kien v. State,* 866

N.E.2d 377, 380–81 (Ind.Ct.App.2007), *trans. denied.* Specifically, "In post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Sanders v. State,* 765 N.E.2d 591, 592 (Ind.2002). Claims of regular or fundamental trial error are not reviewable in a post-conviction proceeding. *See id.* Ross raises six issues on appeal that he frames as fundamental error or an abuse of trial court discretion. Per *Sanders,* we will not address those issues.

■■■ Ross does list as a separate argument that he received ineffective assistance of trial and appellate counsel, which are proper post-conviction issues. However, we find Ross's appellate counsel argument to be waived for lack of cogency. The entirety of his argument on this point is, "Appellate council [sic] failed to raise the substantive issues discussed in summary of arguments section constitutes effective assistance of council [sic]." Appellant's Br. p. 14. Although Ross is proceeding pro se and lacks legal training, such litigants are held to the same standard as trained counsel and are required to follow procedural rules. *Evans v. State,* 809 N.E.2d 338, 344 (Ind.Ct.App. 2004), *trans. denied.* Ross's argument regarding appellate counsel fails to meet a minimum standard of cogency and we decline to address it further. *See* Ind. Appellate Rule 46(A)(8); *Lyles v. State,* 834 N.E.2d 1035, 1050 (Ind.Ct.App.2005), *trans. denied* (holding that failure to develop cogent argument waives the issue for appellate review).

Ross's argument regarding his trial counsel also is very sparse. However, he at least identifies two issues he believes warrant a finding of ineffectiveness. We will address these ineffective assistance of counsel arguments. A claim of ineffective assistance of counsel requires the defendant to show by a preponderance of the evidence that (1) counsel's performance was below the objective standard of reasonableness based on prevailing professional norms and (2) the defendant was prejudiced by counsel's substandard performance, i.e. there is a reasonable probability that, but for counsel's errors or omissions, the outcome of the trial would have been different. *Stephenson v. State,* 864 N.E.2d 1022, 1031 (Ind.2007) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984)). Counsel's performance is presumed effective. *Id.* "The purpose of an ineffective assistance of counsel claim is not to critique counsel's performance, and isolated omissions or errors and bad tactics do not necessarily mean that representation was ineffective." *Grinstead v. State,* 845 N.E.2d 1027, 1036 (Ind. 2006).

The first issue Ross raises is that trial counsel should have objected to the jury being given an instruction that it could find him guilty of Class A felony voluntary manslaughter as a lesser included offense of murder. Specifically, Ross seems to contend that the only proper voluntary manslaughter instruction that could have been given in this case was for Class B felony voluntary manslaughter. The base offense of voluntary manslaughter is a Class B felony, but it is a Class A felony if it is committed by means of a deadly weapon. *See* Ind.Code § 35–42–1–3(a). The charging information against Ross did not specify that he committed murder by means of a deadly weapon.

The State concedes that there is precedent to the effect that it is erroneous, even fundamentally erroneous, to give a jury instruction for a lesser-included offense, where the lesser-included offense contains

an element not present or charged in the original, greater offense. *See Correll v. State*, 639 N.E.2d 677, 679–80 (Ind.Ct.App. 1994) (citing *Yarbrough v. State*, 497 N.E.2d 206, 208–09 (Ind.1986)). In *Yarbrough*, the defendant was charged with Class D felony battery resulting in bodily injury. At trial, defense counsel submitted an instruction stating that the jury could instead find the defendant guilty of criminal recklessness, including Class D felony criminal recklessness, which requires a finding of *serious* bodily injury. The trial court gave the instruction and the jury found the defendant guilty of Class D felony criminal recklessness. On appeal, our supreme court reversed and reduced the conviction to Class B misdemeanor criminal recklessness, despite the fact that defense counsel had tendered the instruction on Class D felony criminal recklessness. It held that because there was no allegation in the charging information that the defendant had caused *serious* bodily injury, it was fundamental error to convict him of Class D felony criminal recklessness. *Yarbrough*, 497 N.E.2d at 209.

In *Correll*, the defendant was charged with Class A felony kidnapping. At trial, defense counsel tendered and the trial court gave an instruction for the offense of criminal confinement. The instruction informed the jury that instead of Class A felony kidnapping, it could find the defendant guilty of either Class D felony or Class B felony criminal confinement.

However, Class B felony criminal confinement requires the use of a deadly weapon to commit the crime, which is not an element of Class A felony kidnapping and which had not been alleged in the charging information. We concluded that *Yarbrough* was controlling and that reduction of the defendant's conviction to Class D felony criminal confinement was required, because that offense did not require proof of use of a deadly weapon. *Correll*, 639 N.E.2d at 680. It was fundamentally erroneous to convict the defendant of a crime, Class B felony criminal confinement, that contained an element not alleged in the charging information, i.e. use of a deadly weapon.[1] *Id.* Our supreme court subsequently relied on *Correll* as valid authority in addressing a nearly identical claim regarding a charge of Class A felony kidnapping with no deadly weapon allegation and a conviction for Class B felony criminal confinement with a deadly weapon. *See Corn v. State*, 659 N.E.2d 554, 557 (Ind. 1995). In Corn as in *Correll*, the defendant's Class B felony criminal confinement conviction was reduced to a Class D felony. *Id.*

A direct application of *Yarbrough, Correll*, and *Corn* to this case would indicate that without an allegation in the charging information that Ross had used a deadly weapon to kill the victim, he only could have been convicted of Class B felony, not Class A felony, voluntary manslaughter.[2]

---

1. *Correll* was a post-conviction appeal. The defendant alleged both fundamental error and ineffective assistance of trial counsel in the giving of the lesser included offense instruction. We chose to resolve the issue as one of fundamental error, but also observed that "Correll's attorneys should have been aware of the discrepancy in the specified elements as compared to the factual allegations in the information." *Correll*, 639 N.E.2d at 682. As noted, our supreme court later clarified that it is improper to address fundamental error

claims in PCR proceedings. *Sanders*, 765 N.E.2d at 592. The defendant in *Yarbrough* also had claimed ineffective assistance of counsel, but the issue was resolved as one of fundamental error; *Yarbrough* was a direct appeal.

2. We acknowledge there appears to be no real dispute here that Ross used a gun to kill his victim. However, the facts as recited in the *Correll* and *Corn* opinions also indicate little doubt that the defendants in both those cases used a gun to commit criminal confinement.

The question before us is whether trial counsel was ineffective for not objecting to an instruction that allowed the jury to convict Ross of Class A felony voluntary manslaughter by use of a deadly weapon. On that point, we note the existence of multiple cases, including binding authority from our supreme court, stating as a general proposition that voluntary manslaughter is an inherently lesser included offense of murder. *See, e.g., Washington v. State,* 808 N.E.2d 617, 625 (Ind.2004); *Clark v. State,* 834 N.E.2d 153, 158 (Ind.Ct.App. 2005). These cases do not distinguish between the Class A felony and Class B felony versions of voluntary manslaughter.[3]

■■■ For jury instruction purposes, if one offense is inherently included within another, it is proper for a trial court to give an instruction on the lesser included offense if there is a serious evidentiary dispute regarding the element that distinguishes the greater offense from the lesser offense. *See Wright v. State,* 658 N.E.2d 563, 566–67 (Ind.1995). The distinguishing element between murder and voluntary manslaughter for jury instruction purposes that cases have focused on is that of sudden heat, which is required for voluntary manslaughter as either a Class A or Class B felony.[4] *See Washington,* 808 N.E.2d at 625–26. The trial court in this case believed there was evidence of sudden heat and on its own proposed giving a voluntary manslaughter instruction. The State did not object to the instruction, but trial counsel for Ross did, asserting there was no evidence of sudden heat. The trial court overruled this objection and gave a pattern jury instruction for both Class A

felony and Class B felony voluntary manslaughter. Trial counsel did not lodge a separate objection to the inclusion of Class A felony voluntary manslaughter in the instruction.

■■■ When a defendant claims trial counsel was ineffective for failing to object, the standard is whether the trial court would have been required to sustain the objection had one been made, or conversely whether the trial court would have committed prejudicial error if it overruled the objection. *See Stephenson,* 864 N.E.2d at 1035. In light of precedent from our supreme court and this court that would have been binding on the trial court, it would not have been required to sustain an objection from trial counsel to instructing the jury that it could find Ross guilty of Class A felony voluntary manslaughter. That precedent holds generally that voluntary manslaughter is an inherently included offense of murder, and that an instruction on voluntary manslaughter is proper if there is evidence of sudden heat that would support a conviction for that offense. *See, e.g., Wilson v. State,* 697 N.E.2d 466, 473–74 (Ind.1998).

This precedent, however, originated at a time when the offense of voluntary manslaughter could only be a Class B felony. Prior to 1987, the voluntary manslaughter statute simply read, "A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a class B felony." *Russell v. State,* 275 Ind. 679, 684, 419 N.E.2d 973, 976 (1981) (quoting I.C. § 35–42–1–3(a)). *Russell* is one of the early cases, post-dating the 1977 revision

---

3. Apparently, the difference between the two was not relevant or not raised by the parties in those cases.

4. Sudden heat is not an element that the State must prove, however. Rather, the State bears

the burden of disproving sudden heat if there is evidence in the record to support a finding of sudden heat. *See Boesch v. State,* 778 N.E.2d 1276, 1279 (Ind.2002).

to the Indiana Criminal Code, holding that voluntary manslaughter is a lesser included offense of murder. *Id.* at 685, 419 N.E.2d at 976. Through a long line of citations over the years, these early cases form the basis of more recent cases still stating as a general proposition that voluntary manslaughter is an inherently lesser included offense of murder. *See, e.g., Wilkins v. State,* 716 N.E.2d 955, 957 (Ind. 1999) (citing *Griffin v. State,* 644 N.E.2d 561, 562 (Ind.1994) (citing *Roark v. State,* 573 N.E.2d 881, 882 (Ind.1991) (citing *Russell* ))).

 In 1987, the legislature amended the voluntary manslaughter statute to add this sentence: "However, the offense is a Class A felony if it is committed by means of a deadly weapon." I.C. § 35–42–1–3(a) (as amended by P.L. 321–1987, § 1). Use of a deadly weapon is *not* an element of murder.[5] *See* I.C. § 35–42–1–1. Thus, since 1987 only Class B felony voluntary manslaughter has been an inherently lesser included offense of murder. An offense is inherently included within another if, through comparison of the statutes establishing the crimes, the lesser offense can be proven by the State by proof of all or less than all of the elements of the greater offense, or if the lesser offense requires a lesser mens rea. *Wright,* 658 N.E.2d at 566. Class A felony voluntary manslaughter requires the State to prove an element—use of a deadly weapon—not found in the murder statute and, pursuant to a clear application of *Wright,* cannot be considered an inherently lesser included offense of murder. Class A felony voluntary manslaughter can be a factually lesser included offense of murder, *if* the charging

information for murder alleges the use of a deadly weapon to commit the crime. *See id.* at 567 (holding that an offense is factually lesser included "[i]f the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense").

Nonetheless, we cannot deem trial counsel ineffective for failing to note an incorrect or overbroad statement of the law that apparently has escaped the notice of our courts for twenty years. Our task is not to review alleged errors in Ross's trial as if this case were on direct appeal, but to assess the competency of his trial counsel. By that standard, we believe Ross has failed to establish that he received ineffective assistance of counsel for failing to object to the jury being given an instruction on Class A felony voluntary manslaughter.

 Ross also contends trial counsel was ineffective with respect to arguing the motion to suppress his audio-taped statement to police while he was hospitalized. As indicated by our discussion of this issue on direct appeal, trial counsel (and appellate counsel) argued that the statement should have been suppressed because it was given while Ross was under the influence of pain medication, apparently morphine, thus rendering the statement involuntary. In this appeal, Ross argues trial counsel should instead have argued that the police officers failed to honor his requests for counsel and to stop talking, in violation of his *Miranda* rights.

---

**5.** The term "deadly weapon" seems odd when discussing a homicide. If death in fact results, then it would necessarily seem that whatever was used to kill the victim was indeed a "deadly weapon," even if that weapon was the defendant's bare hands. This is unlike cases where courts have struggled to decide whether a certain item was a "deadly weapon" where death did not occur. *See, e.g., Davis v. State,* 835 N.E.2d 1102 (Ind.Ct.App. 2005), *trans. denied.*

We conclude Ross has not met the *Strickland* prejudice prong on this issue. Even if trial counsel had successfully argued that Ross's *Miranda* rights had been violated and the trial court had suppressed the taped statement, we do not perceive a reasonable probability that the outcome of the trial would have been different. In the statement, Ross consistently denied having shot anyone and denies any guilt whatsoever. At trial, the evidence of Ross's guilt came exclusively from eyewitnesses to the crime. We are confident the jury would have returned a guilty verdict in this case even if the taped statement had not been introduced into evidence.

## Conclusion

Ross has not convinced us that he received ineffective assistance of trial counsel. All of his other claims of error are either waived or not proper issues for a PCR proceeding. We affirm the denial of post-conviction relief.

Affirmed.

KIRSCH, J., concurs.

ROBB, J., concurs in result with separate opinion.

ROBB, Judge, concurring in result.

I concur in the result reached by the majority, but write separately to clarify why I think the post-conviction court properly concluded that Ross's counsel was not deficient based on counsel's failure to object to the trial court's instruction on voluntary manslaughter.

Prior to Ross's trial in October 2001, our supreme court's opinion in *Wright v. State,* 658 N.E.2d 563, 566–67 (Ind.1995), established a three-step process a trial court must undertake to determine whether to give a proposed instruction on a lesser offense. The first step is the important one here; it provides that the trial court should determine whether the lesser offense is either "inherently" or "factually" included in the offense charged by comparing the statutes defining the two offenses. *Id.* at 566. If the lesser offense can be proved by the same elements or fewer than all the elements of the offense charged, or if the lesser offense can be proved by a lower mens rea, then the lesser offense is inherently included in the offense charged. *Id.* If the lesser offense is not inherently included in the offense charged, it still may be factually included "[i]f the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense. . . ." *Id.* at 567. As the majority correctly recognizes, *see* op. at 836, in Ross's case, voluntary manslaughter was neither inherently nor factually included in the offense charged and therefore, pursuant to *Wright,* the trial court's instruction on the lesser offense should not have been given, 658 N.E.2d at 567 (citing *Straub v. State,* 567 N.E.2d 87, 90 (Ind.1991)).

However, as the majority also correctly recognizes, the first step of the three-step process outlined in *Wright* has been overlooked in cases where the proposed lesser offense is voluntary manslaughter because our supreme court and this court have stated repeatedly, without realizing significant distinctions between voluntary manslaughter as a Class A felony and voluntary manslaughter as a Class B felony, that the offense is inherently a lesser included offense of murder. *See Brown v. State,* 751 N.E.2d 664, 671 (Ind.2001); *White v. State,* 699 N.E.2d 630, 634 (Ind. 1998); *Champlain v. State,* 681 N.E.2d 696, 701–02 (Ind.1997); *Clark v. State,* 834 N.E.2d 153, 158 (Ind.Ct.App.2005); *Morgan v. State,* 759 N.E.2d 257, 264 (Ind.Ct. App.2001), *Garrett v. State,* 756 N.E.2d 523, 528 (Ind.Ct.App.2001), *trans. denied.*

This court's decision in *Washington v. State*, 685 N.E.2d 724 (Ind.Ct.App.1997), is illustrative of this oversight and also is particularly relevant here because it contains facts that are substantially similar to Ross's case. The defendant in *Washington* was leaving a nightclub and walking to his car when the victim, with whom the defendant had an ongoing feud, approached the defendant and made threatening remarks. When one of the defendant's friends attempted to quell the situation, the victim pulled out a gun and fired it. In response, the defendant grabbed a gun and ran away from the victim. As he ran, the defendant shot the victim several times in the chest killing him.

The State charged the defendant with murder. At the close of evidence, the trial court sua sponte instructed the jury on voluntary manslaughter as a Class A felony and the jury found him guilty of this count. In affirming the trial court's decision to give the instruction, this court concluded voluntary manslaughter is inherently included as a lesser offense of murder: "Applying the first step [of the process outlined in *Wright* ] to the case at bar, it is clear that voluntary manslaughter is an inherently lesser-included offense of murder. Voluntary manslaughter is simply murder mitigated by evidence of sudden heat." *Washington*, 685 N.E.2d at 727. The court's reasoning, however, fails to distinguish between voluntary manslaughter as a Class A felony and voluntary manslaughter as a Class B felony. Although the latter is inherently included as a lesser offense of murder, the former is not because it contains an element that murder does not; namely, that the killing is "committed by means of a deadly weapon." Ind.Code § 35–42–1–3(a)(2).

The confusion sowed by cases such as *Washington* create a dilemma in the con-text of an ineffective assistance of counsel claim such as Ross's: can counsel be deemed deficient for failing to object to an instruction where Indiana appellate courts have rendered conflicting opinions on whether such an objection must be sustained? The majority concludes counsel cannot, reasoning that deficiency cannot be based on "an incorrect or overbroad statement of the law that apparently has escaped the notice of our courts for twenty years" and noting that "[o]ur task is not to review alleged errors in Ross's trial as if this case were on direct appeal, but to assess the competency of his trial counsel." Op. at 836. Although I generally agree with these observations, I think this issue is more appropriately resolved by considering our standard of review in appeals from the denial of a petition for post-conviction relief. That standard requires us to affirm unless "the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Stevens v. State*, 770 N.E.2d 739, 745 (Ind.2002), *cert. denied*, 540 U.S. 830, 124 S.Ct. 69, 157 L.Ed.2d 56 (2003). Applying this standard to Ross's deficiency argument, the question for this court becomes whether the evidence unerringly and unmistakably leads to a conclusion that the trial court would have sustained an objection to the voluntary manslaughter instruction on the grounds that it is not inherently included as a lesser offense of murder. Based on the conflict in the caselaw described above, I would conclude the evidence does not unerringly and unmistakably lead to such a conclusion. For this reason, I concur in the result reached by the majority.