Paul FONNER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 55A05–1104–CR–175.

Court of Appeals of Indiana.

Oct. 12, 2011.

Ryan P. Dillon, Law Office of Ryan P. Dillon, P.C., Franklin, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ian McLean, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Paul Fonner ("Fonner") appeals his convictions for Theft, as a Class D felony,[1] and Criminal Trespass, as a Class A misdemeanor,[2] raising for our review whether the trial court failed to advise him of his right to testify on his own behalf and thereby denied him fundamental due process as a pro se criminal defendant, and whether there was sufficient evidence to support his conviction.

We affirm.

### Facts and Procedural History

Keith and Kimberly Donley ("Keith" and "Kimberly" respectively, "the Donleys" collectively) purchased at auction a foreclosed-upon piece of property near a lake in Mooresville. The property was previously owned by Fonner. Upon taking possession in December 2008, the Don-

---

1.  Ind.Code § 35–43–4–2.

2.  I.C. § 35–43–2–2.

leys discovered that the house on that land was gutted of fixtures and many building materials and was run-down from lack of maintenance. Because of building permit issues, they decided to rebuild the house using some of the existing structure and planned to salvage and reuse any remaining materials from the structure that were suitable for their purposes.

The Donleys encountered Fonner on several occasions, asking him at least twice to move his truck off their property. They encountered Fonner again on April 17, 2010. On that date, Fonner approached the Donleys with an offer to fix one of the property's wells and also wanted to take the building materials—wood, copper tubing, and building stones—they were stripping from the house. The Donleys declined Fonner's offer to fix the well; declined to part with the building materials because they intended to reuse, sell, or dispose of the items; and further indicated that for liability reasons they would not allow anyone onto the property.

On May 15, 2010, after a two-week absence from the property, Keith returned to work on the house and discovered that building materials he had left behind were missing and that "the house was gone." (Tr. 119.) Also on May 15, Fonner drove by and accused the Donleys of hurting his dog, leaving Keith feeling sufficiently threatened that he asked Kimberly to call the county sheriff. Kimberly did so, and then came down to the property. When sheriff's deputies arrived, Kimberly mentioned that the construction materials were gone.

The next day, on May 16, 2010, Keith saw that wood and stones from his property were on Fonner's land. On May 17, 2010, Keith contacted the Sheriff's Department and met with Deputy Steve Hoffman ("Deputy Hoffman") the following day. Deputy Hoffman investigated Keith's complaint and found lumber and building stones from the Donleys' property on Fonner's land. As Deputy Hoffman continued his investigation, he determined that some of the building stones from the Donleys' property were used to shore up a wheelchair ramp at another structure nearby. As a result of the investigation, Fonner was arrested and admitted that he had entered onto the Donleys' property and taken some of the building materials, but contended that the materials properly belonged to him because he had been the prior owner of the land and had been foreclosed upon.

On May 19, 2010, Fonner was charged with Theft and Criminal Trespass. On May 20, 2010, the trial court appointed counsel for Fonner. On February 7, 2011, after a dispute regarding discovery matters in the case, Fonner's attorney requested leave to withdraw from the case. The trial court granted the motion but designated him as standby counsel for Fonner, who chose verbally and in a written waiver to proceed pro se after being informed of the requirements and consequences of choosing to proceed without counsel.

A jury trial was conducted on February 22, 2011, at the conclusion of which Fonner was found guilty as charged. On March 24, 2011, the trial court entered judgment against Fonner and sentenced him to 366 days imprisonment for each count, with all but time served suspended to probation, with the sentences to run concurrently.

This appeal followed.

### Discussion and Decision

*Lack of Advisement of Right to Testify on One's Own Behalf*

Fonner contends that he was deprived of his fundamental due process rights because the trial court failed to inform him of his right to testify on his own behalf as a

pro se litigant in a criminal case. The Indiana Constitution guarantees a defendant's right to be heard in criminal cases: "In all criminal prosecutions, the accused shall have the right to a public trial ... to be heard by himself and counsel." Ind. Const. art. I, § 13.

■■■ Because Fonner did not object at trial, we review Fonner's contention for fundamental error.

A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. *See, e.g., Trice v. State,* 766 N.E.2d 1180, 1182 (Ind.2002); *Hayworth v. State,* 904 N.E.2d 684, 694 (Ind.Ct.App.2009). The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews v. State,* 849 N.E.2d 578, 587 (Ind.2006). The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process." *Clark v. State,* 915 N.E.2d 126, 131 (Ind.2009). This exception is available only in "egregious circumstances." *Brown v. State,* 799 N.E.2d 1064, 1068 (Ind.2003).

*Brown v. State,* 929 N.E.2d 204, 207 (Ind. 2010).

Here, Fonner directs our attention to this court's decision in *Winkelman v. State,* 498 N.E.2d 99 (Ind.Ct.App.1986), *trans. denied.* In *Winkelman,* a married couple was charged with neglect of a dependent and forewent counsel, instead proceeding to defend themselves pro se. After the State rested, the Winkelmans and the trial judge engaged in a confused exchange regarding whether the Winkelmans would present a defense and whether either would provide testimony. The trial court interpreted its exchange with the Winkelmans as indicating that they would not produce evidence or call witnesses but instead wished to proceed to closing argument. *Id.* at 100.

On appeal, we explained that "[i]t was the duty of the trial judge to clearly explain to the Winkelmans that they could offer testimony, including their own." *Id.* at 101. We therefore held that the trial court's statement that "you may testify yourself" and its inquiry that the Winkelmans "understand of course that you have the right to" call witnesses in their defense, *id.* at 100, muddled in among a series of unclear exchanges between the Winkelmans and the court, did not amount to a sufficiently clear record of an explanation of the Winkelmans' rights. We therefore concluded that the record did not establish that the Winkelmans had made a knowing and intelligent waiver of their right to be heard during the trial by testifying in their own behalf, and held that a trial court has a duty to explain a defendant's right to "offer testimony, including [his] own, at the end of the state's case." *Id.* at 101; *cf. Phillips v. State,* 673 N.E.2d 1200, 1202 (Ind.1996) (interpreting *Winkelman* to hold that a trial court has an affirmative duty to insure a pro se defendant knowingly and intelligently waived the right to testify at trial and contrasting this with the lack of such affirmative duty where the defendant is represented by counsel).

The State notes that here Fonner was afforded with a clear advisement of his right to counsel and the consequences of waiver of that right, produced three witnesses on his own behalf, examined and cross-examined witnesses, and delivered opening and closing arguments. The State argues that this is unlike *Winkelman,*

where the Winkelmans engaged in a confusing exchange with the trial court wherein they were told that they could "present a statement later on" in the form of closing argument, and thus presented no additional evidence. *Id.* at 100. The State argues that all this demonstrates that there was no deprivation of fundamental due process rights, and thus the trial court's failure to inform Fonner of his right to testify on his own behalf does not rise to the level of fundamental error because there was no undeniable harm imposed upon Fonner as a result of the omission.

Our review of the record reveals that while the trial court provided advisements on Fonner's right to counsel, the consequences of proceeding pro se, and his right not to testify, at no point before the close of evidence was Fonner informed that he had an affirmative right under our state's constitution to testify on his own behalf. The trial court's first mention of Fonner's right to testify on his own behalf came during the court's discussion with Fonner and the State of final instructions for the jury, which came after the State's case in chief, Fonner's presentation of evidence, the State's presentation of rebuttal witnesses, and Fonner's decision not to present any witnesses in surrebuttal:

> [STATE]: No. The . . . obviously, since Mr. Fonner hasn't testified, we'll need that instruction. I don't . . . didn't notice it in there.
>
> THE COURT: Well, that . . . that's a good question.
>
> \* \* \*
>
> There is an instruction that the Court can give if the defendant does . . . does not testify. However, that is not an instruction I may give unless you ask for it.
>
> [FONNER]: I'm sorry. I just got lost.
>
> THE COURT: Okay. There is an instruction under the pattern jury instruc-

tions that is entitled The Defendant Did Not Testify, and it talks about what the jury is to do with that. In other words, they are basically to ignore the fact that you did not testify and not hold it against you. Okay? But under the case law, I cannot give that instruction without your permission or your request.

> [FONNER]: I don't really know how I'd do it.
>
> THE COURT: Well, . . .
>
> [FONNER]: I mean . . .
>
> THE COURT: . . . it's one of those things where you've got to make the call.
>
> [FONNER]: I mean, I put myself on the stand?
>
> THE COURT: No. You don't have to testify. Okay?
>
> [FONNER]: Uh-huh.
>
> THE COURT: You can remain silent. That instruction sometimes is requested by defendants if they do not take the witness stand to remind the jury that they cannot hold that against you.
>
> [FONNER]: No. I don't need you to tell them that.
>
> THE COURT: All right. Fine. I won't give it then. Any other objections to what we have tendered, Mr. Fonner?
>
> [FONNER]: No, I don't think so.

(Tr. 262–64.)

■ This exchange is the first and only mention in the transcript regarding Fonner's right to testify on his own behalf. While slightly more clear than the exchange in *Winkelman,* where a confused discussion occurred among both defendants, the trial judge, and another individual, the above-quoted discussion between Fonner and the trial court is not directed at whether Fonner would present evidence. It focuses instead on the jury instructions, as exemplified by the trial

judge's statement to Fonner that he could "remain silent. That instruction sometimes is requested by defendants if they do not take the witness stand to remind the jury that they cannot hold that against you." (Tr. 263–64.) Because we have held that the trial court has a duty to explain a defendant's right to offer his own testimony at trial, we conclude that the trial court's failure to properly and clearly advise Fonner of his right to testify resulted in the loss of Fonner's ability to make that waiver knowingly and intelligently.

■ We turn now to whether, having found error, that error is harmless. Our supreme court has made it clear that fundamental error serves to avoid the consequences of waiver where a defendant fails to preserve an otherwise reviewable error for appeal. The presence of fundamental error alone, however, does not warrant reversal. Rather, we reverse only were the error is so "blatant" as to "make a fair trial impossible." *Brown*, 929 N.E.2d at 207 (quoting *Clark*, 915 N.E.2d at 131). Although we conclude that the trial court erred by failing to advise Fonner of his right to testify, we cannot agree with Fonner that this amounted to reversible error.

■ Here, though Fonner was not advised of his right to testify, on appeal he presents nothing that indicates what testimony he would have offered at trial had he received a proper advisement or what evidence was not rendered admissible because he did not know he could testify. Fonner did, however, produce three witnesses to testify on his behalf. He attempted to introduce testimony from a fourth witness, but after an offer of proof the trial court ruled the proposed testimony inadmissible, and Fonner does not challenge that ruling on appeal.

While failure to issue an advisement of a defendant's right to testify on his own behalf is of a fundamental nature, our supreme court's development of our standard for review of fundamental errors does not require reversal in each case.[3] Thus, Fonner has failed to adequately demonstrate how he was prejudiced by the absence of an advisement regarding his right to testify on his own behalf.

### Sufficiency of the Evidence

Fonner also argues that there was insufficient evidence of his guilt to sustain the jury's verdict against him.

Our standard of review in sufficiency matters is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind.2007). We do not assess the credibility of witnesses or reweigh evidence. *Id.* We will affirm the conviction unless "no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind.2000)). "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." *Id.* (quoting *Pickens v. State*, 751 N.E.2d 331, 334 (Ind.Ct.App.2001)).

Here, Fonner was charged with Theft, as a Class D felony, and Criminal Trespass, as a Class A misdemeanor. To convict Fonner of Theft, the State was required to prove beyond a reasonable doubt that Fonner knowingly exerted unauthorized control over Keith's property with the intent to deprive Keith of that property's value or use. I.C. § 35–43–4–2(a); App. 114. To convict him of Criminal Trespass, the State was required to prove beyond a reasonable doubt that Fonner

---

**3.** To the extent that *Winkelman* was decided with a divergent understanding of the effect of fundamental error, we similarly decline to hold that the trial court's failure to advise a pro se defendant of his right to testify on his own behalf is reversible error on its face.

knowingly entered onto Keith's property after Keith denied him entry, where Fonner did not have a contractual interest in the property. I.C. § 35–43–2–2(a)(1).

Keith and Kimberly both testified that when Fonner first inquired about taking the materials they had stripped from the existing house on their property, Keith told Fonner that they did not want anyone to go onto the property for liability purposes and that he did not want Fonner to take any of the building materials he had stripped from the house. Keith testified that when he arrived at the property on May 15, 2010, building materials and much of the residential structure that were present when he was last at the site on April 17, 2010, had been removed and that he could see those items on Fonner's property.

██ Deputy Hoffman testified that when he went to Fonner's property to investigate Keith's claims, he recognized the pile of wood in Fonner's property as having only recently been placed there, and said that it "stuck out like a sore thumb" from the other items on Fonner's property. (Tr. 163.) Deputy Hoffman further stated that the building stones on Keith's property were distinctive in appearance. Fonner initially denied having taken the wood and stones from the Donley's property, according to Deputy Hoffman, but eventually admitted to having taken some of the materials and used the stones to help construct a wheelchair ramp on another individual's property. From this evidence, we conclude that the State presented sufficient evidence to support the jury's guilty verdicts.

Affirmed.

MATHIAS, J., and CRONE, J., concur.